CHRISTOPHER M. COUGHLIN *v.*
ARNOLD S. ANDERSON

CHRISTOPHER M. COUGHLIN *v.* FRANK J.
GILBRIDE II ET AL.
(SC 17046)

Borden, Norcott, Katz, Palmer and Vertefeuille, Js.

Argued February 13—officially released August 10, 2004

*Conrad Ost Seifert,* with whom was *Jason Gladstone,* for the appellant (plaintiff).

*Robert C. E. Laney,* for the appellee (substitute defendant in the first case).

*Michael S. Lynch,* for the appellees (defendants in the second case).

*Opinion*

NORCOTT, J. The plaintiff, Christopher M. Coughlin, appeals[1] from the judgment of the trial court, rendered following the trial court's granting of a directed verdict in favor of the defendants, Arnold S. Anderson, Frank Gilbride II, and the law firm of Gilbride, Tusa, Last and Spellane (law firm),[2] at the close of the plaintiff's case-in-chief. The plaintiff claims that the trial court improperly: (1) (a) granted the defendants' motions for a directed verdict on the basis of the Connecticut Marketable Title Act (act); General Statutes § 47-33b et seq.; despite the defendants not having pleaded the act as a special defense, and (b) placed the burden of proof under the act on the plaintiff; (2) concluded that the defendants were entitled to a directed verdict in their favor because the plaintiff had failed to establish an essential element of his case, namely, proof of damages to a reasonable degree of certainty; and (3) precluded the plaintiff's expert witness from rendering an opinion, on redirect examination, regarding the damages resulting from a partial encumbrance of the plaintiff's property when previously, on direct examination, the witness had rendered an opinion limited to the damages resulting from a total encumbrance of the plaintiff's property and had testified that his opinion as to damages was premised on the "critical assumption" that the plaintiff's property was encumbered totally. We affirm the judgment of the trial court.

The record reveals the following relevant facts and procedural history. In 1996, the plaintiff retained Gil-

[1] The plaintiff appealed to the Appellate Court and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[2] On October 3, 2003, after the filing of briefs in this appeal, a suggestion of death notice was filed with the court on behalf of Anderson. Subsequently, pursuant to General Statutes § 52-599, the plaintiff filed, and we granted, a motion to substitute Patrick R. Gil, administrator of the estate of Arnold S. Anderson, as the defendant in the first case.

bride, an attorney and general partner of the law firm, to represent him in the acquisition of certain real property situated at One Random Road in Greenwich. At the time, One Random Road was owned by Arnold S. Anderson, who, along with Sally Stilwell Anderson, had acquired it in 1968 by means of a warranty deed from T. Richard Morrison and Shirley G. Morrison (1968 deed). Language within the 1968 deed indicated that the conveyance to the Andersons had been subject to the reservation of an easement to install water, sewerage, gas and electrical conduits over One Random Road in favor of a parcel of land, previously owned by George K. McKenzie, situated to the south of One Random Road.[3]

This easement in favor of McKenzie's parcel[4] originated in the 1952 conveyance of One Random Road from McKenzie to C. Andrew Perkins (1952 deed). Thereafter, similar language reserving an easement over One Random Road was included within: a 1954 warranty deed transferring One Random Road from Perkins to Walter Brown and Ena Brown (1954 deed); a 1959 warranty deed from the Browns to Carl Lindemann and Marguerite Lindemann (1959 deed); a 1963 warranty deed from the Lindemanns to the Morrisons (1963

---

[3] Specifically, the 1968 deed provided that One Random Road was conveyed: "Excepting and reserving to George K. McKenzie, his heirs and assigns, an easement to enter upon the property . . . for the purpose of laying and maintaining one or more pipes or conduits to carry water, sewerage, gas or electrical energy across [One Random Road] for the use of the property of George K. McKenzie lying to the south of [One Random Road] subject to the undertaking of George K. McKenzie, his heirs and assigns, that upon the completion of the laying of such pipes or conduits, [One Random Road] . . . shall be restored to substantially the same condition as existed prior to such laying."

[4] The plaintiff introduced into evidence at trial several deeds detailing the chain of title for McKenzie's parcel, the dominant estate, over One Random Road. These deeds reveal that, although initially this dominant estate consisted of one parcel of land, subsequently the parcel was divided by its owner into two separate parcels of land: Two Random Road and Four Random Road. Consequently, following this division, One Random Road became the servient estate for these two dominant estates.

deed); and the 1968 deed from the Morrisons to the Andersons.

On October 1, 1996, the plaintiff acquired One Random Road from Arnold S. Anderson[5] by means of a warranty deed (1996 deed) for a purchase price of $700,000. The 1996 deed, in which Anderson covenanted that One Random Road was being transferred to the plaintiff "free from all encumbrances whatsoever except as . . . mentioned," did not state that the property was subject to the easement in favor of Two Random Road and Four Random Road. See footnote 4 of this opinion. Moreover, prior to the October 1, 1996 conveyance, the existence of the easement over One Random Road was not disclosed to the plaintiff by the defendants.

Following acquisition of One Random Road, the plaintiff learned of the existence of the easement and also discovered that, during the 1950s, this right had been exercised through the installation of three subsurface conduits that remained in place on One Random Road as of October 1, 1996.[6] On December 1, 1997,

---

[5] Sally Stilwell Anderson had passed away on March 6, 1994, and, at that time, her one-half interest in One Random Road passed to Arnold S. Anderson. Hereafter, references to Anderson are to Arnold S. Anderson.

[6] At trial, the plaintiff's evidence regarding the existence of these three conduits was based on the testimony of Scott Gaulocher, the owner of a parcel of real property that abuts One Random Road. Gaulocher testified that, as detailed in his deed, his parcel has been encumbered by water, gas and sewerage lines that run in favor of Two Random Road and Four Random Road. Although Gaulocher was unaware of their precise location on his parcel, he testified that he was aware of their general location and, on the basis of that knowledge and an assumption as to the direction the conduits would have to run in order to benefit Two Random Road and Four Random Road, he also testified as to his belief that the conduits likewise encumbered One Random Road. In addition to the three conduits, Gaulocher indicated that One Random Road was encumbered further by a catch basin located adjacent to the plaintiff's house. On cross-examination, Gaulocher testified that his knowledge regarding the existence and positioning of the conduits had been based entirely on the language within his deed and, except for his estimate that the water conduit would be approximately three to four

the plaintiff commenced an action against Anderson, alleging that his failure to disclose the existence of the easement constituted a breach of the covenant against encumbrances contained in the 1996 deed, and that such breach diminished the fair market value of One Random Road. Thereafter, the plaintiff brought a separate action against Gilbride and the law firm, alleging that their failure to discover the easement, and disclose its existence to the plaintiff, prior to the conveyance of One Random Road, constituted professional negligence and a breach of their contract with the plaintiff to provide him with competent legal representation in connection with his acquisition of One Random Road. Upon motion by Gilbride and the law firm in the latter action, the two matters were consolidated by the trial court.

At trial, the plaintiff advanced the theory that the encumbrance of One Random Road was a "floating easement"[7] that encumbered all of the land outside the footprint of the existing dwelling, thereby precluding any additional development. In support of this theory, the plaintiff presented the expert witness testimony of Charles Campbell, an attorney licensed in Connecticut and practicing in the field of real estate. Campbell testified that, because the easement created in the 1952 deed had not specified a particular portion of One Random Road over which the right could be exercised, the easement was floating and covered the entire property beyond the footprint of the existing dwelling. One Random Road was encumbered totally, Campbell testified,

inches wide, he was unaware of the size of the conduits encumbering his parcel and One Random Road.

[7] In this context, a "floating easement" is an easement that, by the terms of its creating instrument, has not been confined to a specific location on the servient estate. J. Bruce & J. Ely, Jr., Easements and Licenses in Land (2001) § 7:4, p. 7-5 n.1. Without language defining its location, the easement is said to float because it potentially could be exercised anywhere on the servient estate and therefore constitutes a burden on the entire servient estate. Id., § 7:7, p. 7-14.

because "there is no place where the property owner can safely build anything [since] the easement holder could come in just after he was finished with construction and say, oh, by the way, I now want to put in my [sewerage] line and you will have to tear this down."

The plaintiff also presented the expert witness testimony of Kevin Harkins, a certified real estate appraiser. Harkins testified that, as of October 1, 1996, the fair market value of One Random Road, free from encumbrances, was $700,000. Assuming, however, that a floating easement encumbered all of the land beyond the footprint of the existing dwelling,[8] Harkins testified that the fair market value of One Random Road as of October 1, 1996, was $442,000—a diminution in value of $258,000. This appraisal of One Random Road, as encumbered by a floating easement, was based on Harkins' determination that the "developable" land—that land within the footprint of the existing dwelling—had a value of $77 per square foot while the encumbered "excess" land outside that footprint had a value of $2.50 per square foot.[9]

---

[8] Harkins testified that the "first assumption" he had made in connection with the formulation of his opinion was that the "entire property outside the perimeter of [the plaintiff's] house, the existing dwelling, was encumbered by easements. In other words, you couldn't do anything with the land outside the perimeter of his house." This assumption meant that the land outside the footprint of the existing dwelling "might as well be swamp land. You can't do anything with it. You can't build on it. You can look at it and plant on it but you can't build on it. It is not developable. It is just excess land."

[9] During his case-in-chief, the plaintiff also testified that, in his opinion, the encumbrance of the floating easement over One Random Road rendered the property as having been worth $229,000 as of October 1, 1996. This opinion as to damages, therefore, represented a diminution in value of $471,000 as compared to the fair market value of One Random Road without an easement.

The plaintiff also presented the testimony of William McCullough, an attorney licensed in Connecticut, who testified that Gilbride's failure to discover the existence of the easement and disclose its existence to the plaintiff constituted a breach of the standard of care required of attorneys engaged in real estate matters, as well as the testimony of Scott Gaulocher, an abutting property owner, who testified as to his understanding that, as

At the close of the plaintiff's case-in-chief, the defendants moved for a directed verdict as to all of the plaintiff's claims, asserting that he had failed to establish proof of damages to a reasonable degree of certainty. Specifically, the defendants claimed that, notwithstanding the fact that language reserving an easement over One Random Road had been included within the 1954, 1959, 1963 and 1968 deeds, the easement had been extinguished by operation of law because those conveyances, which encompassed more than forty years of ownership, were not accompanied by a specific reference to the volume and page within the land records for the 1952 deed that had created the easement. General Statutes §§ 47-33c[10] and 47-33d (1).[11] Although the defendants conceded that the three conduits that were in existence as of October 1, 1996, were valid pursuant to General Statutes § 47-33h (1),[12] they claimed that a

of October 1, 1996, One Random Road was encumbered by three conduits. See footnote 6 of this opinion.

[10] General Statutes § 47-33c provides: "Any person having the legal capacity to own land in this state, who has an unbroken chain of title to any interest in land for forty years or more, shall be deemed to have a marketable record title to that interest, subject only to the matters stated in section 47-33d. A person has such an unbroken chain of title when the land records of the town in which the land is located disclose a conveyance or other title transaction, of record not less than forty years at the time the marketability is to be determined, which conveyance or other title transaction purports to create such interest in land, or which contains language sufficient to transfer the interest, either in (1) the person claiming that interest, or (2) some other person from whom, by one or more conveyances or other title transactions of record, the purported interest has become vested in the person claiming the interest; with nothing appearing of record, in either case, purporting to divest the claimant of the purported interest."

[11] General Statutes § 47-33d provides: "Such marketable record title is subject to: (1) All interests and defects which are created by or arise out of the muniments of which the chain of record title is formed; provided a general reference in the muniments, or any of them, to easements, use restrictions or other interests created prior to the root of title are not sufficient to preserve them, unless specific identification is made therein of a recorded title transaction which creates the easement, use restriction or other interest . . . ."

[12] General Statutes § 47-33h provides in relevant part: "Sections 47-33b to 47-33l, inclusive, shall not be applied to . . . bar or extinguish any easement

directed verdict in their favor was proper because the preserved conduits constituted a fixed, and partial, encumbrance of One Random Road and the plaintiff had presented no evidence of damages resulting from a partial encumbrance, choosing instead to present evidence of damages resulting from a floating easement that had encumbered One Random Road entirely.

In an oral ruling, the trial court granted the defendants' motions for a directed verdict. In considering the impact of the act on the easement over One Random Road, the trial court determined that the first point of inquiry was to ascertain the relevant chain of title by identifying the "root of title."[13] The trial court concluded that, as of October 1, 1996, the root of title for One Random Road was the 1954 deed because that was the conveyance that was "the most recent to be recorded as of a date forty years prior to the time when marketability is being determined. . . ." General Statutes § 47-33b (e). After examining the various deeds within the chain of title, from the 1954 deed to the 1996 deed to the plaintiff, the trial court agreed with the defendants that the act had extinguished the easement over One Random Road because no deed contained the required reference to the specific volume and page within the land records for the 1952 deed that had created the

---

or interest in the nature of an easement, or any rights granted, excepted or reserved by the instrument creating such easement or interest, including any right for future use, if (1) the existence of such easement or interest is evidenced by the location beneath, upon or above any part of the land described in such instrument of any pipe, valve, road, wire, cable, conduit, duct, sewer, track, hole, tower or other physical facility and whether or not the existence of such facility is observable . . . ."

[13] General Statutes § 47-33b (e) provides: " 'Root of title' means that conveyance or other title transaction in the chain of title of a person, purporting to create or containing language sufficient to transfer the interest claimed by such person, upon which he relies as a basis for the marketability of his title, and which was the most recent to be recorded as of a date forty years prior to the time when marketability is being determined. The effective date of the root of title is the date on which it is recorded . . . ."

easement. Although the 1954, 1959, 1963 and 1968 deeds contained language stating that One Random Road was subject to an easement, the trial court concluded that such language was merely a "general reference" to the easement that, pursuant to § 47-33d (1), was insufficient to preserve its validity.

The trial court also concluded that, to the extent that the easement over One Random Road had been exercised previously through the installation of the three conduits, the easement for the conduits was preserved pursuant to § 47-33h (1), thereby constituting a valid partial encumbrance of One Random Road. In that regard, however, the trial court noted that all of the evidence that had been presented during the plaintiff's case-in-chief pertained to damages resulting from a floating easement that had encumbered all of the plaintiff's land beyond the footprint of the existing dwelling. Given that the plaintiff had failed to provide evidence of damages resulting from a partial encumbrance, the trial court concluded that the plaintiff had failed to establish proof of damages to a reasonable degree of certainty. Accordingly, the trial court granted the defendants' motions for a directed verdict. This appeal followed.

Prior to considering the plaintiff's substantive claims, we address the standard of review that guides our consideration of each of those claims. "The standards for appellate review of a directed verdict are well settled. Directed verdicts are not favored. . . . A trial court should direct a verdict only when a jury could not reasonably and legally have reached any other conclusion. . . . In reviewing the trial court's decision to direct a verdict in favor of a defendant we must consider the evidence in the light most favorable to the plaintiff. . . . Although it is the jury's right to draw logical deductions and make reasonable inferences from the facts proven . . . it may not resort to mere conjecture and

speculation. . . . A directed verdict is justified if . . . the evidence is so weak that it would be proper for the court to set aside a verdict rendered for the other party." (Citations omitted; internal quotation marks omitted.) *Janusauskas* v. *Fichman*, 264 Conn. 796, 803–804, 826 A.2d 1066 (2003).

I

The plaintiff first claims that the trial court improperly directed a verdict in favor of the defendants on the basis of the act because the failure of the defendants affirmatively to plead, pursuant to Practice Book § 10-3,[14] the act as a special defense constituted a waiver of the defense. To the extent that the defendants' failure to plead the act did not operate as a waiver of the defense, the plaintiff alternatively claims that the trial court improperly allocated the burden of proof under the act. In its oral decision on the defendants' motions for a directed verdict, the trial court indicated that, pursuant to the act, it was the plaintiff's burden to demonstrate the validity of the easement over One Random Road, either by showing that the act had not operated to extinguish the easement, or that the easement fell within one of the statutory exceptions to the act. The plaintiff now contends that, because the act should have been raised by a special defense, the burden to demonstrate that the easement had been extinguished by the act and that the easement had not been preserved, pursuant to a statutory exception to the act, should have been on the defendants.

The defendants respond that the plaintiff's claims regarding the act as a special defense and the proper allocation of the burden of proof were waived because he had not objected to their invocation and the trial

---

[14] Practice Book § 10-3 (a) provides in relevant part: "When any claim made in a . . . special defense . . . is grounded on a statute, the statute shall be specifically identified by its number."

court's subsequent consideration of the act at trial. Further, they argue that the plaintiff had conceded that he bore the burden of proof under the act. Additionally, the defendants claim that the act was not required to be raised by a special defense, but rather formed a part of the plaintiff's prima facie case because, in order to prove that Anderson had breached the covenant against encumbrances in the 1996 deed and that Gilbride and the law firm negligently had failed to discover and disclose the existence of an encumbrance of One Random Road, the plaintiff had to demonstrate that a valid easement existed as of October 1, 1996, and, accordingly, he bore the burden of demonstrating that the easement had not been extinguished by virtue of the act. We agree with the defendants that, in this set of procedural circumstances, the act was not in the nature of a special defense that had to be pleaded as such by the defendants. Furthermore, we conclude that the trial court properly allocated the burden of proof under the act.[15]

The following additional procedural history is relevant to our resolution of these issues. In their respective answers to the plaintiff's complaints,[16] the defendants denied that, as of October 1, 1996, One Random Road had been encumbered by an easement that had not been disclosed to the plaintiff. The defendants' answers, however, did not invoke the act specifically as a special defense to the plaintiff's claims.

Although not introduced in the pleadings, the act was raised by the defendants as a relevant issue prior to

[15] Because we disagree with the merits of the plaintiff's claims, we need not reach the defendants' claim in response that the plaintiff failed to preserve the claims for appeal.

[16] As previously noted herein, the plaintiff originally commenced two separate actions against the various defendants, with the matters consolidated thereafter. Following consolidation, the plaintiff did not file an amended complaint combining the causes of action against the defendants and, consequently, there are two sets of operative complaints and answers.

trial. In Anderson's compliance with the trial court's trial management order, dated thirteen days before the trial began, the act was included within a section entitled "Statement of Theories of Defense," and it was claimed that the act operated so as to invalidate the easement allegedly underlying the plaintiff's cause of action. Likewise, one week prior to trial, Gilbride and the law firm filed a similar compliance with the trial court's trial management order, indicating within their statement of defense theories that the plaintiff had suffered no loss or damage because "the alleged easement is not valid under the [act] and therefore there is no valid encumbrance [of One Random Road] . . . ."

The record further reveals that the act's applicability to this matter arose once again at trial. During a colloquy on the second day of trial regarding various evidentiary issues, the trial court made the following statement to the parties: "Okay. Now I have one housekeeping matter of my own. And that is the . . . briefs concerning [the] burden of proof [under the act]. I just want to remind you about that. I will still get them tomorrow?" In response to this query, the parties agreed that their respective briefs would be filed with the court on the following day.[17] Thereafter, the defendants filed their brief with the court, claiming that it was the plaintiff's burden to demonstrate that an easement had encumbered One Random Road as of October 1, 1996, and that a part of that proof was the burden to demonstrate that any purported easement was valid pursuant to the act. The plaintiff elected not to file a brief, instead informing the trial court that, based on his research, the defendants' position as to the burden of proof under the act was correct.

---

[17] The trial transcripts do not contain any reference to the act taking place prior to this colloquy on the second day of trial. Given the nature of the trial court's comments and the responses of the parties, however, we assume that there were earlier discussions regarding the act, and the burden of proof thereunder, among the parties and the trial court.

After the trial court had granted the defendants' motions for a directed verdict, the plaintiff filed a motion to set aside the verdict. In this motion, the plaintiff claimed, for the first time, that the act was required to be raised in a special defense, that the defendants had failed to do so, and, therefore, that they had waived any defense based on the act. Furthermore, the plaintiff claimed that, because the act should have been raised in a special defense, it was the defendants, and not the plaintiff, who should have borne the burden of proof under the act. The trial court denied the plaintiff's motion on November 13, 2002.

A

We begin our analysis of the plaintiff's claim that the act was in the nature of a special defense that had to be pleaded affirmatively by the defendants with the following well established principles. "As a general rule, facts must be pleaded as a special defense when they are consistent with the allegations of the complaint but demonstrate, nonetheless, that the plaintiff has no cause of action. . . . The fundamental purpose of a special defense, like other pleadings, is to apprise the court and opposing counsel of the issues to be tried, so that basic issues are not concealed until the trial is underway. . . . Whether facts must be specially pleaded depends on the nature of those facts in relation to the contested issues." (Citations omitted.) *Bennett* v. *Automobile Ins. Co. of Hartford*, 230 Conn. 795, 802, 646 A.2d 806 (1994); see also Practice Book § 10-50.[18]

---

[18] Practice Book § 10-50 provides in relevant part: "Facts which are consistent with [the plaintiff's statement of facts] but show, notwithstanding, that the plaintiff has no cause of action, must be specially alleged. Thus, accord and satisfaction, arbitration and award, coverture, duress, fraud, illegality not apparent on the face of the pleadings, infancy, that the defendant was non compos mentis, payment (even though nonpayment is alleged by the plaintiff), release, the statute of limitations and res judicata must be specially pleaded, while advantage may be taken, under a simple denial, of such matters as the statute of frauds, or title in a third person to what the plaintiff sues upon or alleges to be the plaintiff's own."

We previously have recognized the difficulties that inhere in distinguishing between evidence that may be presented following a general denial and evidence that, because it is consistent with the allegations of a complaint but nevertheless tends to extinguish a cause of action, must have been specially pleaded as a defense in order to be admissible. See *Pawlinski* v. *Allstate Ins. Co.*, 165 Conn. 1, 6, 327 A.2d 583 (1973); *DuBose* v. *Carabetta*, 161 Conn. 254, 260, 287 A.2d 357 (1971). In *Pawlinski*, we clarified this distinction by explaining that the "denial of a material fact places in dispute the existence of that fact. Even under a denial, a party generally may introduce affirmative evidence tending to establish a set of facts *inconsistent* with the existence of the disputed fact. . . . If, however, a party seeks the admission of evidence which is *consistent* with a prima facie case, but nevertheless would tend to destroy the cause of action, the 'new matter' must be affirmatively pleaded as a special defense." (Citations omitted; emphasis added.) *Pawlinski* v. *Allstate Ins. Co.*, supra, 6.[19]

As implicated in this procedural context, we conclude that the act was not a special defense that had to be pleaded affirmatively by the defendants.[20] In their answers, the defendants denied that an undisclosed easement had encumbered One Random Road as of October 1, 1996. Additionally, in their respective compli-

---

[19] This concept is explained well by the following illustration: "D is liable to P if a, b, and c are true unless d is also true. If d contradicts a, b, or c, then evidence of d may be admitted under a denial. If, however, the existence of d does not negate the existence of a, b, or c, but independently destroys liability, then evidence of d may be admitted only under a special defense." *Pawlinski* v. *Allstate Ins. Co.*, supra, 165 Conn. 7.

[20] Of course, our conclusion does not foreclose the possibility that, in another set of procedural circumstances, the act could operate as a special defense that must be pleaded affirmatively. In a scenario in which the act is *consistent* with the allegations of the complaint, but, nonetheless, operates so as to destroy a plaintiff's cause of action independently, the act must be raised as a special defense.

ances with the trial court's trial management order, the defendants articulated theories of defense that included the claim that the act had extinguished the easement underlying the plaintiff's cause of action. Consequently, the plaintiff's allegation that an easement had encumbered One Random Road as of October 1, 1996, was an issue in dispute among the parties. The defendants were entitled, therefore, to "introduce affirmative evidence tending to establish a set of facts inconsistent with the existence of the disputed fact." Id. In this case, the affirmative evidence presented by the defendants negating the existence of an easement encumbering One Random Road as of October 1, 1996, was the assertion that the easement had been extinguished by operation of the act. In this context, because the act was *inconsistent* with the allegations of the complaint, the act was not a special defense and the defendants could introduce evidence regarding the act following the general denials in their answers.

Moreover, even if the act was required to be raised as a special defense in this set of procedural circumstances, the plaintiff's claim still would fail because he has failed to identify harm stemming from the defendants' invocation of the act. As noted, the plaintiff was made aware that the defendants intended to rely upon the act as a theory of defense at least as early as thirteen days prior to the commencement of the trial, when Anderson's compliance with the court's trial management order was filed. In addition, the trial court provided the plaintiff with a full opportunity to present arguments and evidence with regard to the act and its impact on this matter, including the opportunity to present a brief concerning the burden of proof under the act. See *Schulz* v. *Syvertsen,* 219 Conn. 81, 87–89, 591 A.2d 804 (1991) (concluding that trial court's improper reliance on act, in contravention of earlier ruling that act would not be considered as defense

because untimely raised, was harmless because disadvantaged party thereafter was given full opportunity to present arguments and evidence regarding inapplicability of act or preservation of claimed easement pursuant to statutory exception within act). In point of fact, in the plaintiff's motion to set aside the verdict in favor of the defendants, the plaintiff himself relied on the act by presenting the claim that the easement over One Random Road had not been extinguished because its prior exercise preserved it pursuant to § 47-33h (1). We fail to see how the plaintiff was prejudiced by the defendants' invocation of the act when he was aware of their intent to rely on the act and when he was given a full opportunity to address that reliance.

B

The plaintiff next claims that the trial court improperly placed the burden of proof under the act on him. We reject the plaintiff's claim and conclude that the trial court properly placed the burden of proof under the act on the plaintiff.

We note at the outset that this claim is analytically intertwined with the plaintiff's contention that the act operated as a special defense. Put another way, the plaintiff claims that the trial court improperly placed the burden of proof under the act on him because the act should have been raised by a special defense, the burden of which properly should have been assumed by the defendants.

"[I]t is an elementary rule that whenever the existence of any fact is necessary in order that a party may make out his case . . . the burden is on such party to show the existence of such fact . . . ." (Internal quotation marks omitted.) *Branch* v. *Occhionero*, 239 Conn. 199, 206, 681 A.2d 306 (1996). The plaintiff's various causes of action against the defendants were contingent upon a showing that an undisclosed easement had

encumbered One Random Road as of October 1, 1996, and that the easement had diminished the fair market value of One Random Road. The plaintiff, therefore, bore the burden of demonstrating the existence of such an easement, and that burden entailed a showing that the claimed easement had not been extinguished by operation of the act as of October 1, 1996. Accordingly, the trial court properly placed the burden of proving that the easement was valid, either because the act was inapplicable, or because the easement fell within the ambit of a statutory exception to the act, on the plaintiff.

## II

The plaintiff next contends that the trial court improperly concluded that the defendants were entitled to a directed verdict in their favor because he had failed to establish proof of damages to a reasonable degree of certainty. The plaintiff claims that: (1) the trial court improperly concluded that One Random Road had been encumbered partially as of October 1, 1996, because the easement over One Random Road consisted of a single right to lay multiple encumbrances and the exercise of a portion of that right, through the installation of three conduits during the 1950s, operated so as to salvage the entire right, including the potential for future installations and, therefore, the easement over One Random Road was floating as of October 1, 1996; and (2) even if the trial court properly concluded that the easement over One Random Road was partial, there was sufficient evidence presented at trial from which the jury could have determined the measure of damages resulting from such a partial encumbrance.

The defendants claim, in response, that the trial court properly concluded that, pursuant to the act, the easement over One Random Road as of October 1, 1996, was limited to the location of the three existing conduits pursuant to § 47-33h (1). The defendants further con-

tend that, regardless of whether the easement is limited to the three existing conduits, or whether the act had preserved the location of the three existing conduits along with the right to install additional conduits in the future, the location of the easement over One Random Road has been defined by its prior exercise and, therefore, is no longer floating, but rather is a partial encumbrance. In that regard, the defendants claim that the trial court properly concluded that the plaintiff had failed to present sufficient evidence of damages resulting from a partial encumbrance. We agree with the defendants that the location of the easement, regardless as to whether its preserved scope includes the potential for future installations, had been fixed by its prior exercise, thereby creating a partial encumbrance. We further conclude that the plaintiff failed to present sufficient evidence of damages resulting from a partial encumbrance, and that the trial court properly directed a verdict for the defendants.

In order to evaluate the propriety of the trial court's conclusion that the plaintiff had failed to present sufficient evidence on the essential element of damages, we first must consider the impact of the act upon the easement over One Random Road. It is only after a determination has been made as to whether the easement over One Random Road was partial or floating as of October 1, 1996, that the question as to whether the plaintiff presented sufficient evidence of damages may be analyzed. We therefore provide a brief overview of the act and its purposes. "[T]he ultimate purpose of [the act] is to simplify land title transactions through making it possible to determine marketability by limited title searches over some reasonable period of the immediate past and thus avoid the necessity of examining the record back into distant time for each new transaction. . . . [The act is] designed to decrease the costs of title assurance by limiting the period of time that

must be covered by a title search." (Citations omitted; internal quotation marks omitted.) *Il Giardino, LLC* v. *Belle Haven Land Co.*, 254 Conn. 502, 537, 757 A.2d 1103 (2000).

"Pursuant to the act, any person who has an unbroken record chain of title to an interest in land for a period of forty years, plus any additional period of time necessary to trace the title back to the latest connecting title instrument of earlier record (which is the root of title under the act) has a marketable record title subject only to those pre-root of title matters that are excepted under the statute or are caused to reappear in the latest forty year record chain of title. . . . The act declares null and void any interest in real property not specifically described in the deed to the property which it purports to affect, unless within a forty year period, a notice specifically reciting the claimed interest is placed on the land records in the affected land's chain of title." (Internal quotation marks omitted.) Id., 536.

In the present case, it is undisputed that the trial court properly concluded that, as of October 1, 1996, the root of title for One Random Road was the 1954 deed. See footnote 13 of this opinion and the accompanying text. Furthermore, the plaintiff concedes that, within the relevant chain of title from the 1954 deed to the 1996 deed to the plaintiff, there were no specific references to the volume and page in the land records for the 1952 deed creating the easement over One Random Road. Because the language within the chain of title purporting to reserve an easement over One Random Road is considered a "general reference" to the encumbrance and is insufficient to preserve the easement; see General Statutes § 47-33d (1); the easement is extinguished unless it falls within one of the statutory exceptions to the act codified at § 47-33h.

The plaintiff claims that the easement over One Random Road falls within the ambit of § 47-33h (1), the

statutory exception to the act providing that easements, otherwise extinguished pursuant to the act, whose existence is evidenced by the presence of physical facilities, such as underground conduits, even if not observable, are preserved. The plaintiff contends that this statutory provision properly is to be interpreted as meaning that the exercise of a portion of a right granted by an easement preserves not only the portion of the right that has been exercised, but also the right to the future exercise of the right. As applied to this matter, the plaintiff's interpretation of § 47-33h (1) would mean that not only is the easement limited to the location of the three existing conduits preserved, but the partial exercise of the easement preserved the entire easement, including the right to install additional conduits in the future. In contrast, the defendants suggest a narrower construction of § 47-33h (1) that preserves only the portion of the easement that had been exercised as of October 1, 1996, namely, the location of the three existing conduits. Under their interpretation, any right to install additional conduits in the future would not fall within the scope of the statutory exception and is extinguished by the act.

It is well settled that "[f]or a determination of the character and extent of an easement created by deed we must look to the language of the deed, the situation of the property and the surrounding circumstances in order to ascertain the intention of the parties." (Internal quotation marks omitted.) *Lakeview Associates* v. *Woodlake Master Condominium Assn.*, 239 Conn. 769, 777, 687 A.2d 1270 (1997). We need not decide the scope of the easement envisioned by the parties that formed the encumbrance because, under either interpretation of the grant, the easement over One Random Road now is confined to a general fixed location on the servient estate. Even if, as the plaintiff asserts, § 47-33h (1) operates so as to preserve not only the three existing con-

duits over the property, but also the right to install additional conduits in the future, the fact that the easement had been exercised previously through the installation of three conduits now circumscribes the potential future conduits to the same general geographic location as the three existing conduits. Once a floating easement has been used by the easement holder in a certain manner and once the owner of the servient estate has acquiesced in such use, the easement has become fixed and the easement holder, absent an express grant of authority to do so, thereafter may not vary the location of the easement to another portion of the servient property without the consent of the servient estate owner. See J. Bruce & J. Ely, Jr., Easements and Licenses in Land (2001) § 7:6, p. 7-13; see also *Richardson* v. *Tumbridge*, 111 Conn. 90, 96, 149 A. 241 (1930) (recognizing well established principle that when easement has been granted in indefinite terms, and owner of dominant estate has definitely fixed its location and manner of use, location cannot thereafter be varied without consent of owner of servient estate). We agree with the trial court, therefore, that the encumbrance of One Random Road no longer may be considered a floating easement, but rather is, and was, as of October 1, 1996, a fixed and partial easement.

Having resolved the issue as to whether the easement was partial or floating as of October 1, 1996, we turn to a consideration of the plaintiff's claim that sufficient evidence of the damages resulting from such a partial encumbrance was presented at trial. Before this court, the plaintiff asserts that, although no specific evidence of damages resulting from a partial encumbrance of One Random Road was presented at trial, the jury nevertheless could have determined the measure of damages from the partial encumbrance because the plaintiff presented to the jury an "approach or formula" that would have enabled such a calculation. More specifically, the

plaintiff claims that the jury could have engaged in a two step process in order to calculate the damages resulting from a partial encumbrance of One Random Road: first, the jury could have considered the testimony of Scott Gaulocher, an abutting property owner; see footnote 6 of this opinion; in order to determine the swath of the area that had been impacted by the partial encumbrance consisting of the three conduits; and second, the jury then could have relied upon Harkins' valuation of One Random Road at $77 per square foot for developable land and $2.50 per square foot for the encumbered excess land, in order to approximate the damages resulting from the partial encumbrance.

We disagree with the plaintiff that the jury could have made a determination, on the basis of a consideration of the evidence and reasonable inferences therefrom, as to the damages resulting from the partial encumbrance of One Random Road. Putting aside the question as to whether the jury actually could have determined the swath of the easement over One Random Road,[21] the jury had no means to assign a value to the encumbered portion of One Random Road and to determine the measure of damages resulting from the partial encumbrance. The plaintiff's suggestion to the contrary, within the second stage of his progression, that the jury could have relied upon Harkins' appraisal of the value of the property per square foot of developable and excess land, is without merit.

[21] In contending that the jury reasonably could have approximated the appropriate size of the partial encumbrance, the plaintiff relies principally upon the testimony of Gaulocher. See footnote 6 of this opinion. We are not persuaded, however, that this testimony, in combination with the other evidence presented by the plaintiff at trial, could have allowed the jury to determine, without resorting to speculation, the appropriate size of the partial encumbrance. Gaulocher's testimony as to the existence, location and size of the encumbrance of One Random Road was based on a host of assumptions and beliefs that, in turn, were premised on nothing more than the language contained in a deed for a parcel of land that borders One Random Road.

At trial, Harkins opined that, assuming the land outside the footprint of the existing dwelling to be encumbered entirely by a floating easement, the developable portion of One Random Road—the land within the footprint of the existing dwelling—had a value of $77 per square foot as of October 1, 1996, and the excess land had a value of $2.50 per square foot as of that date. When asked to provide the basis for his appraisal of the value of One Random Road per square foot of developable land, Harkins testified that the value of $77 per square foot as of October 1, 1996, was based on an assessment of comparable sales of real property that had taken place in the vicinity of One Random Road at around the time of October 1, 1996. More specifically, Harkins indicated that his research revealed that as of October 1, 1996, the price per square foot for developable land within the vicinity of One Random Road was between $20 and $40. Harkins estimated the value per square foot of developable land on One Random Road to be $77, however, because of the "inverse relationship that exists between size and price. Typically somebody will pay more for something that is smaller than they will larger per square foot." Harkins' appraisal of the value of the developable portion of One Random Road as $77 per square foot was premised, therefore, entirely on the relatively diminutive size of the developable portion of One Random Road. This premise is bound up with Harkins' "critical assumption" that all of the land outside the footprint of the existing dwelling was encumbered by a floating easement.[22]

The plaintiff's suggestion that the jury reasonably could have used Harkins' valuation of One Random

[22] In his appraisal of One Random Road dated January 31, 2002, Harkins indicated that One Random Road had a total area of 15,450 square feet. Of that total area, Harkins' appraisal stated that the "only developable area of the lot is the footprint of the existing dwelling or 1,551 square feet. The remaining land area of 13,899 square feet is considered excess acreage due to the floating easements which inhibit any future development."

Road per square foot of developable and excess land presupposes that the values assigned by Harkins were fungible figures that could be applied in order to determine the measure of damages resulting from a partial encumbrance of One Random Road. To the contrary, Harkins' testimony reveals that his valuation figures were dependent upon his working assumption that all of One Random Road, outside the footprint of the existing dwelling, was encumbered by a floating easement. Because the easement over One Random Road was partial, however, Harkins' appraisal of the value of the developable portion at $77 per square foot is no longer accurate. The principle of the "inverse relationship" between size and price that leads to a higher price per square foot for parcels with smaller developable area no longer applies as the developable portion of One Random Road increases beyond the 1551 square feet of developable area on which Harkins' appraisal was based. See footnote 22 of this opinion.

"It is axiomatic that the burden of proving damages is on the party claiming them. . . . When damages are claimed they are an essential element of the plaintiff's proof and must be proved with reasonable certainty." (Internal quotation marks omitted.) *Frillici* v. *Westport*, 264 Conn. 266, 283, 822 A.2d 1172 (2003). Because the plaintiff produced no evidence from which the jury could have determined a measure of damages resulting from a partial encumbrance of One Random Road,[23] the trial court properly granted the defendants' motion for a directed verdict.[24]

[23] We are also mindful that the only other evidence presented regarding damages—the testimony of the plaintiff—similarly was premised entirely on the theory that the entirety of One Random Road beyond the footprint of the existing dwelling, was encumbered. See footnote 9 of this opinion.

[24] We note that, on appeal, the plaintiff advances a separate claim that, with regard to the claims of professional negligence and breach of contract against Gilbride and the law firm, the plaintiff did present evidence of damages at trial. Specifically, the plaintiff claims that a consequential damage of the tortious conduct by Gilbride and the law firm was that the plaintiff

## III

The plaintiff's final claim is that the trial court improperly restricted Harkins' testimony on redirect examination by the plaintiff. The plaintiff contends that the trial court abused its discretion by precluding Harkins from testifying, on redirect examination, as to his opinion of the damages resulting from a partial encumbrance of One Random Road. We reject the plaintiff's claim.

Prior to trial and in accordance with Practice Book § 13-4 (4),[25] the plaintiff filed two separate expert witness disclosures for Harkins. In the first disclosure, dated January 3, 2002, the plaintiff indicated that Harkins was expected to testify as to the fair market value of One Random Road with several improvements, including an expanded living area, a pool and a pool house, which the plaintiff had anticipated constructing but had been precluded from doing so by the existence of the easement over the property. In the second supplementary disclosure, dated February 8, 2002, the plaintiff indicated that Harkins also was expected to testify as to a $258,000 diminution in value as a result of the easement over One Random Road. As an attachment to this disclosure of February 8, 2002, the plaintiff included an appraisal report from Harkins detailing the bases for his opinion as to damages, and the approach

thereafter had to retain the expert services of Harkins and Campbell. The plaintiff did not raise this claim either during the trial or in his motion to set aside the directed verdict. Because the plaintiff failed to preserve the issue for appeal, we decline to review it. *River Bend Associates, Inc.* v. *Conservation & Inland Wetlands Commission*, 269 Conn. 57, 82, 848 A.2d 395 (2004); see Practice Book § 60-5 ("court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial").

[25] Practice Book § 13-4 (4) provides in relevant part: "[A]ny plaintiff expecting to call an expert witness at trial shall disclose the name of that expert, the subject matter on which the expert is expected to testify, the substance of the facts and opinions to which the expert is expected to testify, and a summary of the grounds for each opinion, to all other parties within a reasonable time prior to trial. . . ."

used to determine the diminution in value of One Random Road. See footnote 22 of this opinion. Both of these disclosures indicated that, in harmony with the plaintiff's theory at trial, Harkins' testimony regarding damages would be based on the notion that a floating easement encumbered the entirety of One Random Road beyond the footprint of the existing dwelling, precluding additional development of One Random Road and diminishing its fair market value.

At trial, during direct examination by the plaintiff, Harkins reiterated that his opinion as to damages was based on the assumption that One Random Road had been encumbered by a floating easement, which precluded any development of the land outside the footprint of the existing dwelling. On cross-examination, Harkins conceded that if this "critical assumption" that One Random Road had been entirely encumbered was incorrect, his opinion as to a $258,000 diminution in value would be affected. Thereafter, during redirect examination, the plaintiff attempted to elicit testimony from Harkins as to whether his methodology, meaning the values assigned to One Random Road per square foot of developable and excess land, could be used to determine the measure of damages resulting from a partial encumbrance. The defendants objected to this line of questioning, claiming that Harkins' expert witness disclosure and prior testimony had been limited to an opinion as to the damages resulting from a total encumbrance of One Random Road, and that Harkins was being asked to proffer an entirely new opinion as to the damages resulting from a partial encumbrance. The trial court sustained the defendants' objection.

Our standard of review regarding a trial court's ruling on the admissibility of expert testimony is well settled. "[W]e note that the trial court has wide discretion in ruling on the admissibility of expert testimony and, unless that discretion has been abused or the ruling

involves a clear misconception of the law, the trial court's decision will not be disturbed." (Internal quotation marks omitted.) *State* v. *Wargo*, 255 Conn. 113, 123, 763 A.2d 1 (2000).

Our review of the record reveals nothing to persuade us that the trial court abused its discretion in precluding the plaintiff from questioning Harkins, on redirect examination, as to whether his methodology could be used in order to determine the measure of damages resulting from a partial encumbrance of One Random Road. Prior to the plaintiff's attempt during his redirect examination of Harkins at trial, Harkins' opinion as to damages had been confined solely to those damages resulting from a total encumbrance of One Random Road by a floating easement. This assumption was expressed not only in both expert witness disclosures filed prior to trial, but also in Harkins' appraisal report dated January 31, 2002, and his testimony on direct examination.

We note that nothing prohibited the plaintiff and Harkins, prior to trial, from advancing alternative claims of damages—one opinion if the encumbrance of One Random Road was total, and another opinion if the encumbrance was partial. The plaintiff and Harkins did not do so. Instead, the plaintiff elected to pursue a theory of damages that was contingent upon a demonstration that the encumbrance of One Random Road was total and prohibited all future development beyond the footprint of the existing dwelling. Given the plaintiff's election, it was not an abuse of discretion for the trial court to preclude Harkins, on redirect examination, from rendering a new opinion as to the damages resulting from a partial encumbrance of One Random Road.

The judgment is affirmed.

In this opinion the other justices concurred.