******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# FREDERICK J. WALTERS ET AL. *v.*
# FRANCESCO G. SERVIDIO ET AL.
## (AC 46455)

Moll, Westbrook and Flynn, Js.

*Syllabus*

The plaintiffs and the defendants owned real property on Road A, which intersects with Road B in two locations. The northern intersection was north of the defendants' properties and south of the plaintiffs' properties and was known as the "Y right of way." The only access to the southern intersection was obtained by traveling over an area between the defendants' properties (disputed area), which was rocky, wooded, and unpaved. The Y right of way, which provided the plaintiffs with access to Road B, was much closer to the plaintiffs' properties than the southern intersection. In 1908, before the Y right of way existed, the original subdivision map for the area was recorded on the land records. In 1958, the northern part of the subdivision was resubdivided into larger lots, some of which would later become the plaintiffs' properties, and the resubdivision map recorded on the land records shows the Y right of way. When the defendants purchased their property on Road A, the paving in front of their house that ran from the northern part of the disputed area to the Y right of way was not a road but a driveway nine feet in width, and there was no paving or other physical manifestation of a road in the disputed area. Since the defendants purchased the property on Road A in 1987, with the exception of a short period of time during a sewer project in late 2003 and early 2004, during which time the defendants granted to the town of Greenwich an easement for sewer installation, the disputed area had not been passable to traffic and the defendants had not observed anyone travel through the disputed area for any purpose, including to access the southern intersection. The plaintiffs filed on the town's land records affidavits of fact against the defendants' properties on Road A and Road B that falsely claimed an easement over the disputed area. The plaintiffs thereafter commenced the present action, seeking, inter alia, a declaratory judgment that they had an express or implied easement over the disputed area and a judgment quieting title to their alleged easement. The defendants asserted several counts in a counterclaim against the plaintiffs, including trespass, slander of title, and nuisance or disturbance of a right pursuant to statute (§ 47-41). Following a trial, the court rendered judgment for the defendants on all counts of the plaintiffs' operative complaint and the defendants' counterclaim. On the plaintiffs' appeal to this court, *held*:

1. The trial court properly determined that the plaintiffs did not have an express easement over the defendants' properties for any purpose: the express language in the plaintiffs' deeds granted to them the right to

use Road A from their lots southerly to Road B for the specific purpose of accessing Road B, and there was no express language in the plaintiffs' deeds granting them the right to travel on Road A south of the Y right of way, over and through the disputed area to access Road B at its southern intersection with Road A; moreover, even assuming that there was any ambiguity as to the scope of the plaintiffs' easement over Road A, the court's findings regarding the extrinsic evidence of the surrounding circumstances supported its conclusion that there was no express easement.

2. The plaintiffs could not prevail on their claims that the trial court improperly determined that they did not have an implied easement over the disputed area and that any implied easement rights granted to them by the original subdivision map were extinguished pursuant to the Marketable Record Title Act (§ 47-33b et seq.):

a. The trial court properly determined that there was no intent to create an easement by implication over the defendants' property when the plaintiffs' predecessors in interest conveyed to the plaintiffs their respective properties, as there was nothing in the language of the plaintiffs' deeds nor in the maps referenced therein that expressly granted to the plaintiffs an easement over the defendants' property, and this court could not imply such intent from the language of the plaintiffs' deeds, from the maps referenced therein, or from the surrounding circumstances; moreover, the court determined that the Y right of way was sufficient for all access to the plaintiffs' properties and therefore that the plaintiffs' use of the disputed area was not reasonably necessary for the use and normal enjoyment of their properties.

b. Contrary to the plaintiffs' claim, a reference in the defendants' deed to the original subdivision map could not reasonably be construed as granting the plaintiffs an easement to travel over the defendants' property and through the disputed area: to construe the defendants' deed as granting the plaintiffs an easement over all of the defendants' property, including the disputed area, would be contrary to the language of the defendants' deed, which does not mention the plaintiffs, their respective properties, or an easement over the disputed area; moreover, the original subdivision map does not depict Road A as a continuous street but, rather, depicts a stone fence that crosses and blocks the entirety of Road A just south of where the Y right of way would later be created, which is consistent with the court's finding that the northern portion of Road A is a dead end starting at the defendants' driveway and the southern portion of Road A is a dead end starting at the southernmost part of the disputed area; furthermore, on the basis of the record, the court's finding that there was no physical manifestation of a road was not clearly erroneous and, therefore, the court properly determined that the exceptions to the act in § 47-33h did not apply and that any implied easement rights over the disputed area granted to the plaintiffs by the original subdivision map were extinguished by the act.

3. The trial court properly ruled for the defendants on the plaintiffs' claims of obstruction of an easement, as the trial court properly determined that the defendants were the owners of all right, title, and interest in the disputed area free and clear of any claim by the plaintiffs of any easement, right of way, or other right or interest to pass onto, over, or across the defendants' properties for any purpose, and there can be no impairment of an easement where no easement exists.

4. The plaintiffs could not prevail on their claim that the trial court improperly determined that one of the plaintiffs, F, trespassed on the defendants' property; in the plaintiffs' complaint and during trial, F admitted to entering the defendants' property to clean out the disputed area, and it was clear from the act of clearing out the debris in the disputed area that F had the intent to enter the disputed area, which was sufficient to satisfy the element of intent for the tort of trespass.

5. The trial court improperly rendered judgment for the defendants on the count of their counterclaim alleging slander of title: because the court's ultimate factual conclusion that the plaintiffs acted with malice was fatally inconsistent with the court's subordinate factual finding that the plaintiffs firmly believed the statements in the affidavits, the court's conclusion that the plaintiffs slandered the defendants' title could not stand; moreover, the court awarded no damages to the defendants on their slander of title claim, and pecuniary damages must be shown to prove a claim of slander of title.

6. The plaintiffs could not prevail on their claim that the trial court improperly found for the defendants on the count of their counterclaim alleging that the plaintiffs violated § 47-41: contrary to the plaintiffs' claim, § 47-41 does not require evidence of harassment, negligence, or recklessness, the court made no findings of an unreasonable interference, and the plaintiffs cited no binding authority for their argument that harassment, negligence, or recklessness needed to be shown; moreover, the plaintiffs would have had to show an ownership interest in the land over which they claimed an easement, but the plaintiffs had no ownership interest in any of the land over which an easement was being claimed and the plaintiffs made no argument that filing affidavits on the land records claiming an easement over real property over which they had no ownership interest failed to constitute a disturbance of the rights of the defendants, the owners of the fee simple.

Argued May 13—officially released July 30, 2024

*Procedural History*

Action seeking, inter alia, a declaratory judgment that the plaintiffs have an express easement over certain real property owned by the defendants, and for other relief, brought to the Superior Court in the judicial district of Stamford-Norwalk, where the defendants filed

a counterclaim; thereafter, the matter was tried to the court, *Clark, J.*; judgment for the defendants on the complaint and on the counterclaim, from which the plaintiffs appealed to this court. *Reversed in part*; *judgment directed in part*.

*Ryan S. Tougias*, with whom, on the brief, was *Michael J. Jones*, for the appellants (plaintiffs).

*Scott M. Harrington*, for the appellees (defendants).

*Opinion*

FLYNN, J. In this land use dispute concerning whether the plaintiffs, Frederick J. Walters, Susan M. Walters, Michael S. Mason, and Michele A. Mason, have an easement over an approximately forty-four foot long by forty foot wide dirt section of a private road between 22 Ridge Street and 33 Cognewaugh Road in the Cos Cob section of Greenwich, known as the disputed area, the plaintiffs appeal from the judgment of the trial court rendered in favor of the defendants, Francesco G. Servidio and Rita Servidio. On appeal, the plaintiffs claim that the court improperly determined that (1) they could not prevail on their claims of (a) express easement, (b) easement by implication, and (c) obstruction of a purported easement, and (2) the defendants prevailed on their counterclaims of (a) trespass, (b) (1) slander of title, and (b) (2) a violation of General Statutes § 47-41. We agree only with the plaintiffs' claim concerning slander of title and, accordingly, reverse in part and affirm in part the judgment of the trial court.

The following facts, as found by the trial court, and procedural history are relevant. Ridge Street, a private road, intersects with Cognewaugh Road, a public road, in two locations. The northern intersection, which lies north of the defendants' properties at 22 Ridge Street and 33 Cognewaugh Road, and south of the plaintiffs' properties at 38 and 40 Ridge Street, is known as the

Y right of way. Access to the southern intersection is obtained by traveling over the disputed area, which is where a portion of 22 Ridge Street abuts 33 Cognewaugh Road. The disputed area is rocky, wooded, and unpaved. The Y right of way, which provides the plaintiffs with access to Cognewaugh Road, is much closer to the plaintiffs' properties than is the southern intersection.

In 1908, before the Y right of way existed, map 353 was recorded on the Greenwich land records. Map 353 is the original subdivision map for Highview Park. About fifty years later, in 1958, Joseph DeLuca and William DeLuca (DeLucas), as trustees of the northern part of Highview Park, resubdivided that northern portion of Highview Park into thirteen larger lots, including part of which that would later become the plaintiffs' properties. Map 3965, which was recorded on October 22, 1958, depicts that DeLuca resubdivision and shows the Y right of way, which provides access from Ridge Street to Cognewaugh Road for the thirteen resubdivided lots. The plaintiffs' properties were not developed until after the DeLucas created the Y right of way. Map 3992, which was recorded on December 29, 1958, depicts the Y right of way but shows it as reduced in width from fifty feet, as reflected on map 3965, to twenty feet.

The Walterses acquired real property at 38 Ridge Street by warranty deed (Walters deed), which was recorded in 1987, in book 1742 at page 339 of the land records of the town of Greenwich (town). The Masons acquired 40 Ridge Street by warranty deed (Mason deed), which was recorded in 1997, in book 2952 at page 77 of the town's land records. The defendants own 22 Ridge Street and recorded their warranty deed in 1989, in book 1992 at page 6 of the town's land records. Both the Walters deed and the Mason deed reference map 3965 and map 3992; the deeds do not reference map 353. The plaintiffs do not dispute and admitted in

their complaint that the defendants own, in fee simple, Ridge Street in front of and adjoining 22 Ridge Street. The defendants also purchased 33 Cognewaugh Road, which abuts 22 Ridge Street, and recorded that warranty deed in 2006, in book 5306 at page 128 of the town's land records.

When the defendants purchased 22 Ridge Street, the paving in front of their house that ran from the northern part of the disputed area to the Y right of way was not a road but a driveway nine feet in width, and there was no paving or other physical manifestation of a road in the disputed area. When the defendants first viewed 22 Ridge Street with a Realtor, the northern part of Ridge Street was a dead end starting at the driveway to 22 Ridge Street and the southern part of Ridge Street was a dead end starting at the southernmost part of the disputed area. After the defendants purchased 22 Ridge Street, Francesco Servidio parked a pickup truck on his driveway just north of the disputed area. Since the defendants purchased 22 Ridge Street, with the exception of a short period of time during a sewer project in late 2003 and early 2004, during which time the defendants granted to the town an easement for sewer installation, the disputed area was not passable to traffic and the defendants have not observed any of the plaintiffs, trash collectors, mail carriers, or oil delivery trucks travel through the disputed area for any purpose, including to access the southern intersection. The plaintiffs filed on the town's land records affidavits of fact against the defendants' properties at 22 Ridge Street and 33 Cognewaugh Road that falsely claimed an easement over the disputed area.

The plaintiffs thereafter commenced the present action. In their third amended complaint, the plaintiffs sought a declaratory judgment that they have an express easement over the disputed area (counts one and five); sought a judgment quieting title to their alleged express

easement pursuant to General Statutes § 47-31 (counts two and six); sought a declaratory judgment that they have an implied easement over the disputed area (counts three and seven); sought to quiet title to their alleged implied easement pursuant to § 47-31 (counts four and eight); asserted claims arising from the defendants' alleged obstruction of the plaintiffs' purported easements over the disputed area (counts nine and eleven); and asserted claims that the defendants trespassed on the disputed area (counts ten and twelve). The defendants filed an answer and asserted the following four counterclaims against the plaintiffs: an action seeking to quiet title to the disputed area pursuant to § 47-31; trespass; slander of title; and nuisance or disturbance of a right pursuant to § 47-41.

The defendants filed a motion for summary judgment seeking judgment on all twelve counts of the operative complaint and the first count of their counterclaim. On January 12, 2022, the court, *Hon. William F. Clark*, rendered summary judgment in favor of the defendants on the tenth and twelfth counts of the complaint, alleging trespass.[1] Following a later trial, the court, in an April 6, 2023 memorandum of decision, rendered judgment in favor of the defendants on counts one through nine and on count eleven of the plaintiffs' operative complaint and rendered judgment in favor of the defendants on all counts of their counterclaim. The court reasoned that, "[b]ased on the credible facts presented and corroborated through credible and reliable witness testimony, including expert testimony . . . the disputed property is rightfully owned by the defendants.

---

[1] The plaintiffs stated in their operative complaint that the defendants own the disputed area. In rendering summary judgment as to the trespass counts of the complaint, the court noted that the plaintiffs admitted that a trespass onto one's own property is a novel claim and reasoned that the essence of the plaintiffs' claims of trespass is the defendants' alleged interference with the purported easement, which the plaintiffs' claims of obstruction of the purported easement address.

While all the properties in question once were held together and while a private road was once planned to run uninterrupted through the property, the court [*Hon. William F. Clark*] finds that the time and manner in which the property was ultimately subdivided and transferred is significant. The word[ing] of the deeds demonstrates to the court that a clear distinction was drawn as to the defendants' property interest versus that of the plaintiff[s] in regard to the disputed area. The creation of the Y intersection, the facts surrounding the sewer project that passed through the disputed area and the credible evidence presented from the defendants and an adjacent property owner demonstrate proof to the court that justifies and support[s] finding for the defendants."

The court determined that the defendants are the owners of all right, title, and interest in the portion of Ridge Street that abuts and adjoins the defendants' property at 22 Ridge Street free and clear of any claim by the plaintiffs of any easement, right of way, or other right or interest to pass into, over, or across 22 Ridge Street or 33 Cognewaugh Road for any purpose. The court permanently enjoined and prohibited the plaintiffs from travelling onto, over, or across any property of the defendants at 22 Ridge Street or 33 Cognewaugh Road, including, but not limited to, the portion of Ridge Street that abuts and adjoins their property at 22 Ridge Street. The court further ordered that the affidavits of fact filed by the plaintiffs against the defendants' properties at 22 Ridge Street and 33 Cognewaugh Road be discharged and dissolved and that they are of no further effect or force. This appeal followed. Additional facts will be set forth as necessary.

## I

The plaintiffs claim that the court improperly rejected their claims of (a) an express easement, (b) implied

easement, and (c) an obstruction of their purported easement. We do not agree.

A

The plaintiffs claim that the court improperly determined that they did not have an express easement over 22 Ridge Street or 33 Cognewaugh Road for any purpose. We do not agree.

We begin with a review of some fundamental principles of the law concerning easements. "An express easement is created by an express grant by deed or other instrument satisfying the statute of frauds." *Martin Drive Corp.* v. *Thorsen,* 66 Conn. App. 766, 773, 786 A.2d 484 (2001). "It is well settled that [a]n easement creates a nonpossessory right to enter and use land in the possession of another and obligates the possessor not to interfere with the rules authorized by the easement. . . . [T]he benefit of an easement . . . is considered a nonpossessory interest in land because it generally authorizes limited uses of the burdened property for a particular purpose. . . . [E]asements are not ownership interests but rather privileges to use [the] land of another in [a] certain manner for [a] certain purpose . . . ." (Internal quotation marks omitted.) *Stefanoni* v. *Duncan,* 282 Conn. 686, 700, 923 A.2d 737 (2007).

"Our scope of review as to the intent behind language in a deed is plenary. . . . Although the intent to create an easement by deed is therefore a question of law over which our review is plenary . . . if the language of the deed is incomplete or ambiguous regarding the location, scope, or use of the easement, the trial court's resolution of those issues represents a question of fact subject to the clearly erroneous standard of review. . . . In the absence of unambiguous or complete language in the deed, therefore, determining the location, scope, and use of an express easement is a fact-intensive

inquiry properly subject to the clearly erroneous standard of review." (Citations omitted.) *Deane* v. *Kahn*, 317 Conn. 157, 167 n.6, 116 A.3d 259 (2015).

"[W]hen faced with a question regarding the construction of language in deeds, the reviewing court does not give the customary deference to the trial court's factual inferences. . . . The meaning and effect of the [language in the deed] are to be determined, not by the actual intent of the parties, but by the intent expressed in the deed, considering all its relevant provisions and reading it in the light of the surrounding circumstances. . . . Our basic rule of construction is that recognition will be given to the expressed intention of the parties to a deed . . . and that it shall, if possible, be so construed as to effectuate the intent of the parties. . . . In arriving at the intent expressed . . . in the language used, however, it is always admissible to consider the situation of the parties and the circumstances connected with the transaction, and every part of the writing should be considered with the help of that evidence. . . . In the construction of a deed or grant, the language is to be construed in connection with, and in reference to, the nature and condition of the subject matter of the grant at the time the instrument is executed, and the obvious purpose the parties had in view. . . . [I]f the meaning of the language contained in a deed or conveyance is not clear, the trial court is bound to consider any relevant extrinsic evidence presented by the parties for the purpose of clarifying the ambiguity. . . . Furthermore, [a] reference to [a] map in [a] deed, [f]or a more particular description, incorporates [the map] into the deed as fully and effectually as if copied therein. . . . [T]he identifying or explanatory features contained in maps referred to in a deed become part of the deed, and so are entitled to consideration in interpreting the deed as though they were expressly recited therein." (Internal quotation marks omitted.)

*Williams* v. *Green Power Ventures, LLC*, 221 Conn. App. 657, 673–74, 303 A.3d 13 (2023), cert. denied, 348 Conn. 938, 307 A.3d 273 (2024).

The plaintiffs argue that their respective deeds grant them the right to use Ridge Street from the northerly line of their lots southerly to Cognewaugh Road, which includes a right to travel south along the entirety of Ridge Street, as it was laid out on map 353 in 1908, to access the southern intersection of Ridge Street with Cognewaugh Road. The defendants dispute that the plaintiffs have any right to traverse southerly over the entirety of Ridge Street to access the disputed area. The court concluded that "[t]he plaintiffs' expansive reading of the rights articulated in their respective deeds is not supported by the clear language of the deeds, the history of the properties in question and the transfers thereof." We agree with the court.

The Walters' 38 Ridge Street deed conveys to them "the right to use Ridge Street from the northerly line of the premises hereby conveyed southerly to Cognewaugh Road for all purposes of travel and for the purpose of laying, maintaining and connecting with public utilities therein. Together with the right to use for all lawful purposes the strip 20 feet in width shown on a certain map . . . numbered 3992, which strip is shown as lot ' "Y" Right of Way' on said map and runs from Ridge Street to Cognewaugh Road, the grantees agreeing that this right of way is in lieu of any right of way over tract 'Y' as shown on Map No. 3965 on file in the office of the Town Clerk of Greenwich. . . ." The Mason deed to 40 Ridge Street is similar to the Walters deed in all relevant respects.[2]

---

[2] Specifically, the Mason deed conveys to them "the right to use Ridge Street from the northerly line of the premises hereby conveyed southerly to Cognewaugh Road for all purposes of travel and for the purpose of laying, maintaining and connecting with public utilities thereon. TOGETHER with the right to use for all lawful purposes the strip 20 feet in width shown on a certain map . . . numbered 3992, which strip is shown as lot ' "Y" Right of Way' on said map and runs from Ridge Street to Cognewaugh Road, the

The Walters' and the Masons' respective deeds (plaintiffs' deeds) specifically grant to them the right to use Ridge Street from their lots "southerly to Cognewaugh Road . . . ." The plaintiffs' deeds do not grant them the right to travel southerly on the entirety of Ridge Street, but, rather, the deeds narrow the scope of the grant of southerly access on Ridge Street to the specific purpose of accessing Cognewaugh Road. Specifically, the plaintiffs' deeds grant them the right to travel southerly on Ridge Street for the purpose of accessing Cognewaugh Road "[*t*]*ogether* with the right to use . . . the strip 20 feet in width shown on a certain map . . . numbered 3992, which strip is shown as lot ' "Y" Right of Way' . . . ." (Emphasis added.) The Y right of way, as referenced in map 3992, connects Ridge Street to Cognewaugh Road south of what would become the plaintiffs' properties and those of others. The plaintiffs' deeds also reference map 3965, which was recorded in October, 1958, and which shows a resubdivision of the lots on the northern part of Ridge Street. In addition to the resubdivision that created the lots that would later be the plaintiffs' properties, map 3965 also created the Y right of way from Ridge Street to Cognewaugh Road. Map 3992, which was recorded in December, 1958, shows the Y right of way reduced in width from its depiction on map 3965 and does not show the disputed area.

As we have noted, the express language of the plaintiffs' deeds grants them the right to use Ridge Street southerly to access Cognewaugh Road together with the right to use the Y right of way as depicted on map 3992. There is no express language in the plaintiffs' deeds granting them the right to travel on Ridge Street

Grantor agreeing that this right of way is in lieu of any right of way 'Y' as shown on Map No. 3965 on file in the office of the Town Clerk of Greenwich. . . ." The minor differences between the Mason deed and the Walters deed do not impact our analysis.

south of the Y right of way, over and through the disputed area of the defendants' 22 Ridge Street property to access Cognewaugh Road at its southern intersection with Ridge Street. It is clear that the DeLucas created the Y right of way for means of egress and ingress to Cognewaugh Road for the newly resubdivided lots. See, e.g., *Williams* v. *Green Power Ventures, LLC*, supra, 221 Conn. App. 674 (deeds are construed in connection with nature and condition of subject matter of grant at time instrument is executed and in connection with obvious purpose parties had in view).

The plaintiffs argue that their deeds' grant to them of the right to use the Y right of way as depicted on map 3992 is a separate and distinct legal right that does not limit or modify their right to use Ridge Street southerly to access Cognewaugh Road through the disputed area. They contend that "[t]he first easement derives from the rights originally conveyed by Annie Cocks: 'to use the private roads designated on same map in common with others to whom this right has been or may here and after be granted,' 'to use the highways abutting the said lot in common with others,' and 'with the right to use the private roads as designated on [map 353].' "

Cocks transferred lots, as shown on map 353, to the plaintiffs' predecessors in interest in the early 1900s. The language of these early 1900s deeds from Cocks to the plaintiffs' predecessors in interest is not pertinent to our analysis of an express easement. It is the language of the plaintiffs' deeds that is at issue, and the plaintiffs' deeds do not reference map 353, which was recorded fifty years before the DeLucas resubdivided the northerly lots of Highview Park and created the Y right of way on map 3965, which is referenced in the plaintiffs' deeds. The plaintiffs' deeds provide them with access to Cognewaugh Road through the Y right of way on

map 3992, which depicts a portion of real property shown on map 353 together with the Y right of way.

The language of the plaintiffs' deeds is clear: they grant the plaintiffs access to Cognewaugh Road through the Y right of way and do not expressly grant them an easement over the disputed area to reach Cognewaugh Road at the southern intersection. Accordingly, the trial court was not bound to consider extrinsic evidence as to the intention of the grantors. See *Williams* v. *Green Power Ventures, LLC*, supra, 221 Conn. App. 674. Assuming without deciding, however, that there is any ambiguity as to the scope of the plaintiffs' easement over Ridge Street, we note that the court's findings regarding the extrinsic evidence of the surrounding circumstances support its conclusion that there was no express easement. First, the defendants' deeds to 22 Ridge Street and 33 Cognewaugh Road do not contain an express easement in favor of the plaintiffs, or anyone else, to travel southerly on Ridge Street past the Y right of way and through the disputed area to access Cognewaugh Road at the southern intersection. Additionally, the plaintiffs' expert witness on land titles, whom the court found credible, testified that none of the deeds in the defendants' root title forward contains any express easement in favor of the plaintiffs or any other party to travel over 22 Ridge Street.

Second, during the course of the sewer project that occurred in parts of 2003 and 2004 wherein the town installed a sewer line down the entire length of Ridge Street, the defendants granted a temporary easement to the town. The temporary easement allowed the town to direct traffic to a detour through the disputed area and across the defendants' driveway in front of 22 Ridge Street at times when access to Cognewaugh Road through the Y right of way was blocked for construction. The passage through the disputed area only occurred during daylight hours when the detour was necessary

due to open trenches on Cognewaugh Road, which were covered at night, and was overseen by Greenwich police officers detouring the traffic. When the sewer project was complete, the town repaved the northern portion of Ridge Street but did not pave the disputed area. In order to prevent traffic from traveling through the disputed area, consistent with its impassable nature prior to the project, the town installed two large boulders and a silt fence with sandbags in the disputed area. The town later removed the boulders, graded and seeded the disputed area, installed a drainage swale with small gravel and added curbing at the north and sound ends of the disputed area. The small gravel washed out of the drainage swale onto the newly paved portion of the southern part of Ridge Street and the town installed a large six to seven inch riprap in and over the drainage swale.

Sometime in 2004, Michael Mason attempted to have the town pave or otherwise open the disputed area to through traffic, but a representative of the town refused. The town sent a memorandum to Michael Mason detailing that: Ridge Street is a private street that has paved upper and lower sections but has an approximately forty foot section in between that is not paved; prior to the sewer project, the nonpaved portion of Ridge Street was overgrown with brush; and the easement acquired by the town required the town to restore the road to as reasonably good condition as existed prior to construction. In 2010, Frederick Walters and Michael Mason requested and attended a meeting with the town's first selectman, town manager, town attorney, and representatives of the police and fire departments in an attempt to persuade them to open or pave the disputed area, but the town officials denied the request. The defendants had also entered into a road maintenance agreement in 1989, unrelated to the sewer project, and the court found that that agreement had expired

and did not impact the defendants' title to 22 Ridge Street in any way.

The court determined, and we agree, that "it made perfect sense for the 'Y' to be created in order for the lots that would eventually become the plaintiffs' respective lots to have access to Cognewaugh Road. . . . To the extent [that] [the disputed area] was, as the plaintiff[s] suggest, a through lane of travel, then one might expect the sewer project to have updated and corrected any deterioration of the section of road and repaved it once the project was done. By not doing so, in spite of requests for that outcome by the plaintiffs, the town, an otherwise disinterested party to any claims over the disputed area, aligned with the other history available in this case to confirm that Ridge Street does not pass through the disputed area. Additional circumstantial evidence, which the court finds persuasive, is seen through the conduct of postal carriers, delivery drivers, and Realtors who the court finds have engaged in conduct that confirms a break in Ridge Street such that the road dead ends at the defendants' property from both the north and south. This fact was a selling point for the adjacent property owners, as well as the defendants." Accordingly, even if we were to assume ambiguity in the plaintiffs' deeds regarding intent, the court properly determined that the plaintiffs did not have an express easement over the disputed area.

For the foregoing reasons, we conclude that the court properly rejected the plaintiffs' claims of an express easement.

B

The plaintiffs next claim that the court improperly determined that (1) they did not have an implied easement over the disputed area and (2) any implied easement rights granted to them by map 353 were extinguished pursuant to the Marketable Record Title Act,

General Statutes § 47-33b et seq. (act). Again, we disagree.

"The finding of an easement by implication is a question of law. . . . The law adopted in this state regarding the creation of easements by implication is well established. Where . . . an apparently permanent and obvious servitude is imposed on one part of an estate in favor of another, which at the time of severance is in use, and is reasonably necessary for the fair enjoyment of the other, then, upon a severance of such ownership . . . there arises by implication of law a grant or reservation of the right to continue such use. . . . Further, [insofar] as necessity is significant it is sufficient if the easement is highly convenient and beneficial for the enjoyment of the portion granted. . . . The reason that absolute necessity is not essential is because fundamentally such a grant by implication depends on the intention of the parties as shown by the instrument and the situation with reference to the instrument, and it is not strictly the necessity for a right of way that creates it. . . .

"The two principal elements we examine in determining whether an easement by implication has arisen are (1) the intention of the parties, and (2) if the easement is reasonably necessary for the use and normal enjoyment of the dominant estate. . . . The intent of the grantor to create an easement may be inferred from an examination of the deed, maps and recorded instruments introduced as evidence. . . . A court will recognize the expressed intention of the parties to a deed or other conveyance and construe it to effectuate the intent of the parties. . . . In doing so, it always is permissible to consider the circumstances of the parties connected with the transaction. . . . Thus, if the meaning of the language contained in a deed or conveyance is not clear, the court is bound to consider any relevant

extrinsic evidence presented by the parties for the purpose of clarifying the ambiguity." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Utay* v. *G.C.S. Realty, LLC*, 72 Conn. App. 630, 636–37, 806 A.2d 573 (2002).

1

Concerning the first factor of an easement by implication, which concerns the intention of the parties, we conclude that the court properly determined that there was no intent to create an easement by implication over the defendants' property when the plaintiffs' predecessors in interest conveyed to the plaintiffs their respective properties.[3] As detailed in part I A of this opinion, there is nothing in the language of the plaintiffs' deeds nor in the maps referenced therein that expressly grants to the plaintiffs an easement over the defendants' property, which includes the disputed area, to access Cognewaugh Road at the southern intersection. Additionally, we cannot imply such intent from the language of the plaintiffs' deeds, from the maps referenced therein, nor from the surrounding circumstances particularly in light of the fact that the DeLucas created the Y right of way at the time that they resubdivided the northern portion of Highview Park closer to the plaintiffs' real properties.

The plaintiffs further argue that the defendants executed a road maintenance agreement when they purchased 22 Ridge Street in 1989, which provides that the parties are presently using jointly and in common with others a road known as Ridge Street as shown on map

---

[3] "[T]he use of intent to find an implied easement long has been disfavored in Connecticut, largely because of the obvious statute of frauds problem, but also because the practical impact is to make land records less reliable. . . . Consequently, implied grants of any interest in land are allowed to a very much more limited extent [in Connecticut] than in many other states." (Citations omitted; internal quotation marks omitted.) *Utay* v. *G.C.S. Realty, LLC*, supra, 72 Conn. App. 638 n.9.

353. They contend that the defendants "ratified an implied easement for Ridge Street when they gave the town the sewer easement in 2004 . . . which shows Ridge Street as a continuous and uninterrupted road fronting on their properties." This argument lacks merit.

As we detailed in part I A of this opinion, at the time of trial the road maintenance agreement had expired and the court found that that agreement did not impact title to the defendants' 22 Ridge Street property in any way. The court also found that the temporary easement that the defendants had granted to the town during the sewer project so that it could detour traffic through the disputed area when necessary was only temporary and had ended.

Regarding the second factor of whether the easement is reasonably necessary for the use and normal enjoyment of the dominant estate, the plaintiffs argue that: the record is clear that an easement by implication over the entirety of Ridge Street is highly convenient and beneficial; when they purchased their properties they expected they would have the benefit of the entirety of Ridge Street; and there are concerns of safety and the ability of police, fire, and emergency services to timely access the plaintiffs' houses in the case of an emergency. We are not persuaded.

The court determined, regarding whether the plaintiffs' use of the disputed area was reasonably necessary for the use and normal enjoyment of their properties, that "[t]he Y access is sufficient for all access to the plaintiffs' properties. Over the many years since the creation of the Y, virtually all access to the properties north of 22 Ridge Street has been through the Y. Even the defendants use the Y for access [from Cognewaugh Road] to 22 Ridge Street." The court went on to find that, other than the limited and specific circumstances

of the sewer project for which the defendants granted the town an easement, the disputed area has not been and is not a travel section of Ridge Street. The plaintiffs argue that access through the disputed area to the southern intersection is highly convenient and beneficial, but, as highlighted by the court, they have access to Cognewaugh Road from the paved Y right of way, which is closer to their properties than the disputed area.

The court additionally found that there was "no emergency access issue in this case relative to the plaintiffs' properties." This finding is not clearly erroneous because emergency vehicles can access the plaintiffs' properties through the Y right of way. To support their argument of the need for emergency vehicles to access Ridge Street from Cognewaugh Road through the disputed area, the plaintiffs highlight evidence at trial supporting a factual finding different from the one reached by the court. The fact that there may be support in the record for a different factual finding than the one reached by the court is irrelevant at this stage in the judicial process. See *Osborn* v. *Waterbury*, 197 Conn. App. 476, 482, 232 A.3d 134 (2020), cert. denied, 336 Conn. 903, 242 A.3d 1010 (2021). "On appeal, we do not review the evidence to determine whether a conclusion different from the one reached could have been reached. . . . [Instead] [w]e review the totality of the evidence, including reasonable inferences therefrom, to determine whether it could support the trier's decision." (Internal quotation marks omitted.) Id.

The court's finding that access through the southern intersection was not reasonably necessary for the fair enjoyment of the plaintiffs' properties was not clearly erroneous. See, e.g., *Schultz* v. *Barker*, 15 Conn. App. 696, 701–702, 546 A.2d 324 (1988) (court's finding of no easement by implication was not clearly erroneous where defendant had convenient access to beach via

alternate routes despite that pathways over plaintiffs' property were convenient and beneficial).

### 2

The plaintiffs further argue that map 353 "indicates a clear intent by the common grantor, [Cocks], to create a right of access for ingress and egress to the lots shown on the map from Ridge Street" and that Cocks "attempt[ed] to do two things: (1) to sell the properties delineated on map 353; and (2) to grant to the purchasers of those properties the right, in common with others, to access those lots by use of Ridge Street. . . . Therefore, the conveyances by [Cocks], taken together, support the intent memorialized in map 353 to establish a private way known as Ridge Street for access to the lots along Ridge Street." (Citations omitted.) The plaintiffs contend that the court improperly determined that any implied easement rights granted to the plaintiffs by map 353 were extinguished by the act.[4]

---

[4] The plaintiffs also argue that the defendants did not plead the act as a special defense and, therefore, the court should not have considered it. In *Coughlin* v. *Anderson*, 270 Conn. 487, 853 A.2d 460 (2004), our Supreme Court determined that the act does not always operate in the nature of a special defense that has to be pleaded affirmatively, but, rather, the act only operates as a special defense in the procedural context of cases wherein the act is consistent with the allegations of the complaint but nevertheless tends to extinguish the cause of action. See id., 501–502. In the present case, the defendants denied in their answer the plaintiffs' allegation that, by virtue of the deeds from Cocks that reference map 353, the plaintiffs have an implied easement to use the disputed area. They also denied that the disputed area was a road and stated that it is not designed for through traffic. Accordingly, the issue of whether an easement by implication arose from Cocks' initial deeds and from map 353 was in dispute between the parties. Because the act was inconsistent with the allegations in the complaint, it was not a special defense, and the defendants could introduce evidence regarding the act following the general denials in their answers. See id. Even if the act were required to be raised as a special defense in the present case, the plaintiffs cannot prevail on their argument because they failed to identify harm stemming from the defendants' invocation of the act. See id., 503. The fundamental purpose of a special defense is to apprise the court and opposing counsel of the issues to be tried so that basic issues are not concealed until the trial is under way. See id., 501. It would be difficult for the plaintiffs to argue that the defendants' reliance

Pursuant to the act, "any person who has an unbroken record chain of title to an interest in land for a period of forty years, plus any additional period of time necessary to trace the title back to the latest connecting title instrument of earlier record (which is the root of title under the act) has a marketable record title subject only to those pre-root of title matters that are excepted under the statute or are caused to reappear in the latest forty year record chain of title. . . . The act declares null and void any interest in real property not specifically described in the deed to the property which it purports to affect, unless within a forty year period, a notice specifically reciting the claimed interest is placed on the land records in the affected land's chain of title."[5] (Citation omitted; internal quotation marks omitted.) *Il Giardino, LLC* v. *Belle Haven Land Co.*, 254 Conn. 502, 536, 757 A.2d 1103 (2000).

The court determined that the defendants' "root of title to 22 Ridge Street dating back more than forty years prior to their 22 Ridge Street deed is contained in a warranty deed from Pasquale Ginise, Frank M. Ginise, Bertha Ginise Durante, Isabella Ginise and James L. Ginise to Leonard Ginise recorded December 14, 1948, in volume 435 at page 28 of the Greenwich land records. Both Attorney Lasnick and Attorney Harvey agreed that this is the [defendants'] root of title. Both experts also agreed, and this court finds, that there is no encumbrance describing the plaintiffs' claimed easement in the root deed of title, or more than forty

---

on the act was concealed from them and caused them harm because the plaintiffs' expert discussed the act on direct examination and the plaintiffs discussed the applicability of the act in their posttrial brief. Accordingly, we determine that the court properly considered the act.

[5] General Statutes § 47-33c provides in relevant part that "[a]ny person having the legal capacity to own land in this state, who has an unbroken chain of title to any interest in land for forty years or more, shall be deemed to have a marketable record title to that interest . . . ."

years thereafter leading up to the [defendants'] receipt of the November 8, 1989, deed to 22 Ridge Street."

The plaintiffs note that the language in Cocks' conveyances in the early 1900s of the right to use Ridge Street "together . . . in common with others to whom this right has been or may . . . hereafter be conveyed" was not carried forward past the forty year root of title for 22 Ridge Street. The plaintiffs contend, however, that because the defendants' 22 Ridge Street deed references map 353, it therefore imposes an obligation on a title searcher to consult that map when determining whether 22 Ridge Street is encumbered. See *McBurney* v. *Cirillo*, 276 Conn. 782, 809, 889 A.2d 759 (2006) (specific reference to map in deed imposes duty on title searcher to examine map incorporated by reference into deed), overruled in part on other grounds by *Batte-Holmgren* v. *Commissioner of Public Health*, 281 Conn. 277, 284–89, 914 A.2d 996 (2007). The defendants' 22 Ridge Street deed conveyed to them "Lots Nos. Fifty-two (52) and Fifty-three (53) on a certain map entitled 'Map of Highview Park, North Mianus, Greenwich, Conn' now on file in the office of the Town Clerk of the Town of Greenwich and therein numbered 353" together with "all right, title and interest in and to the highway, Ridge Street, in front of and adjoining said premises" and "[t]ogether with the right to use in common with others, the access of ingress to and egress from the premises herein to and from Cognewaugh Road all as shown on a certain map now on file in the Office of the Town Clerk of the Town of Greenwich and therein numbered 3992."

The reference in the defendants' 22 Ridge Street deed to map 353 cannot reasonably be construed as granting the plaintiffs an easement to travel over 22 Ridge Street and through the disputed area to access Cognewaugh Road at the southern intersection. The defendants' 22 Ridge Street deed expressly conveys to the defendants the fee simple to Ridge Street in front of and adjoining

22 Ridge Street and mentions map 353 only for the purpose of describing the placement of the lots conveyed. Additionally, the defendants' 22 Ridge Street deed specifically provides access to Cognewaugh Road as shown on map 3992, which depicts the Y right of way. To construe the 22 Ridge Street deed as granting the plaintiffs an easement over all of 22 Ridge Street, including the disputed area, would be contrary to the language of the defendants' deed, which does not mention the plaintiffs, their respective properties, or an easement over the disputed area. Additionally, map 353 does not depict Ridge Street as a continuous street; rather, the map depicts a line referred to as "stone fence," which crosses and blocks the entirety of Ridge Street just south of where the Y right of way would later be created by the DeLucas. This is consistent with the court's finding that the northern portion of Ridge Street is a dead end starting at the defendants' driveway and the southern portion of Ridge Street is a dead end starting at the southernmost part of the disputed area.

The plaintiffs further argue that the court improperly determined that the exceptions to the act in General Statutes § 47-33h do not apply. Section 47-33h provides in relevant part that the act "shall not be applied to . . . bar or extinguish any easement or interest in the nature of an easement, or any rights granted, excepted or reserved by the instrument creating such easement or interest, including any right for future use, if (1) the existence of such easement or interest is evidenced by the location beneath, upon or above any part of the land described in such instrument of any pipe, valve, road, wire, cable, conduit, duct, sewer, track, hole, tower or other physical facility and whether or not the existence of such facility is observable . . . ." Whether a physical manifestation of a road existed that may evidence an easement in the disputed area is a question of fact to which we apply a clearly erroneous standard

of review. See *Village Apartments, LLC* v. *Ward*, 169 Conn. App. 653, 664, 152 A.3d 76 (2016), cert. denied, 324 Conn. 918, 154 A.3d 1008 (2017). "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . Under the clearly erroneous standard of review, a finding of fact must stand if, on the basis of the evidence before the court and the reasonable inferences to be drawn from that evidence, a trier of fact reasonably could have found as it did. . . . In reviewing factual findings, [w]e do not examine the record to determine whether the [court] could have reached a conclusion other than the one reached. . . . Instead, we make every reasonable presumption . . . in favor of the trial court's ruling." (Citation omitted; internal quotation marks omitted.) *Circulent, Inc.* v. *Hatch & Bailey Co.*, 217 Conn. App. 622, 630, 289 A.3d 609 (2023).

The court found that "[t]here was no paving or other physical manifestation of a road in the disputed area when the defendants purchased 22 Ridge Street on November 8, 1989." The plaintiffs argue that this finding was clearly erroneous because no evidence was presented at trial that Ridge Street did not physically exist, there was testimony at trial that Ridge Street was passable to motor vehicle traffic at points during the 1980s and 1990s, and photographic evidence at trial showed Ridge Street being open and passable.[6]

---

[6] The plaintiffs also argue that there is a physical manifestation of a road because a 1992 home video of the defendants, which was admitted at trial as defendants' exhibit A, shows a foot path through the disputed area with cars parked to the north and south of the disputed area on the side of the road. The court, however, interpreted that home video differently, and, under a section break in the facts titled "activities by others recognizing that vehicles cannot pass through the disputed area," the court found that "[t]he video of the defendants' family gathering in 1992 showed that another truck was parked on the south part of Ridge Street just south of the disputed area." Evidence that cars were parked where Ridge Street dead ends to the

Clearly, the parties disagree as to whether the disputed area contained any physical manifestation of a road. Evidence was presented at trial that the disputed area was unpaved, overgrown with weeds, wooded, full of rocks and ledge, and was not a through street but, rather, the northern part of Ridge Street was a dead end starting at the defendants' driveway and the southern part of Ridge Street was a dead end from the southernmost part of the disputed area. The disputed area was passable only for a brief time during parts of 2003 and 2004 during the sewer project when the defendants temporarily granted an easement to the town. The court found that the defendants have not observed the plaintiffs, trash collectors, mail carriers, or oil delivery trucks travel through the disputed area for any purpose, including accessing the southern intersection. The court further found that, following the sewer project, water flowed down past 22 Ridge Street into the disputed area from the northern part of Ridge Street, bringing leaves and debris with it, causing a buildup at the disputed area and resulting in Francesco Servidio moving leaves and debris to allow the water to flow through the disputed area and into a drainage swale installed by the town.

On the basis of the record, we determine that the court's finding that there was no physical manifestation of a road was not clearly erroneous. Accordingly, we conclude that the court properly determined that the exceptions to the act in § 47-33h do not apply and that any implied easement rights over the disputed area granted to the plaintiffs by map 353 were extinguished by the act.

For the foregoing reasons, we conclude that the court properly determined that the plaintiffs do not have an easement by implication over the disputed area.

north and south of the disputed area is further evidence that the disputed area did not have any physical markings of a road.

C

The plaintiffs claim that the court improperly rejected their claim that the defendants obstructed the plaintiffs' alleged easement over the disputed area. They contend that the court improperly determined that they had no easement rights over the defendants' properties and that the defendants obstructed the disputed area with vehicles, wood, building materials, a dumpster, planters, and a tree, thereby obstructing the plaintiffs' ability to make use of their express and implied easement rights. We are not persuaded.

We already have concluded in part I A and B of this opinion that the court properly determined that the defendants are the owners of all right, title, and interest in the portion of Ridge Street that abuts and adjoins their property at 22 Ridge Street free and clear of any claim by the plaintiffs of any easement, right of way, or other right or interest to pass onto, over, or across 22 Ridge Street or 33 Cognewaugh Road for any purpose. The law is settled that it is the obligation of the owner of a servient estate to refrain from doing something or suffering something to be done that results in an impairment of an easement. See *Schwartz* v. *Murphy*, 74 Conn. App. 286, 297, 812 A.2d 87 (2002), cert. denied, 263 Conn. 908, 819 A.2d 841 (2003), cert. denied, 546 U.S. 820, 126 S. Ct. 352, 163 L. Ed. 2d 61 (2005). It is axiomatic that there can be no impairment of an easement where no easement exists. Accordingly, the court properly ruled in favor of the defendants on the plaintiffs' claim of obstruction.

II

The plaintiffs next claim that the court improperly determined that the defendants prevailed on their counterclaims of (a) trespass, (b) (1) slander of title, and (b) (2) a violation of § 47-41. We address each claim in turn.

A

The plaintiffs claim that the court improperly determined that the defendants prevailed on their counterclaim alleging that Frederick Walters trespassed on their property.[7] We disagree.

The following additional facts, as found by the trial court, and procedural history are relevant. In the obstruction counts of the plaintiffs' operative complaint, they alleged that, as a result of the defendants' actions or inactions, debris obstructed the disputed area "which debris the Walters removed on October 19, 2015, and deposited at the Town of Greenwich Transfer Station." The court found that Frederick Walters admitted to trespassing onto the defendants' 22 Ridge Street property on October 19, 2015, to clean out the disputed area. The court concluded, when ruling in favor of the defendants on their counterclaim of trespass, that, "[w]hile the proven transgressions were relatively nominal and largely efforts to clear the land of overgrowth and debris, the fact of the matter is that it is not the plaintiffs' land to clear or occupy. . . . [T]he plaintiffs may not, without permission or invitation, enter the property of the defendants."

The essential elements of a claim for trespass are: (1) ownership or possessory interest in land by the

_____

[7] This claim concerns the court's decision regarding the defendants' counterclaim of trespass. The court earlier had decided counts ten and twelve of the plaintiffs' complaint, which sounded in trespass against the defendants, in favor of the defendants on summary judgment. After taking much trial evidence, the court made numerous findings of fact in the April 6, 2023 judgment that also affected the plaintiffs' claim that the defendants had trespassed. The judgment file reflects that, in the court's April 6, 2023 decision, the court decided counts one through nine and eleven of the operative complaint and all counts of the defendants' counterclaim. The plaintiffs' notice of appeal stated only that they were appealing from the later judgment of April 6, 2023. There is no appeal from the earlier grant of summary judgment in favor of the defendants on the plaintiffs' trespass claims, which judgment has become final.

defendants; (2) invasion, intrusion or entry by the plaintiff affecting the defendants' exclusive possessory interest; (3) done intentionally; and (4) causing direct injury. See *Bristol* v. *Tilcon Minerals, Inc.*, 284 Conn. 55, 87, 931 A.2d 237 (2007).

"[T]he scope of our appellate review depends upon the proper characterization of the rulings made by the trial court. To the extent that the trial court has made findings of fact, our review is limited to deciding whether such findings were clearly erroneous. When, however, the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *FirstLight Hydro Generating Co.* v. *Stewart*, 328 Conn. 668, 677–78, 182 A.3d 67 (2018). "Intent is clearly a question of fact that is ordinarily inferred from one's conduct or acts under the circumstances of the particular case." *Suarez* v. *Dickmont Plastics Corp.*, 229 Conn. 99, 111, 639 A.2d 507 (1994).

The plaintiffs argue that "[t]he court's logic was post hoc: the plaintiffs do not have an easement, therefore, [Frederick] Walters trespassed. That analysis fails to account for the elements of the tort of trespass, particularly intent, which the evidence did not satisfy." We do not agree.

The court's mention of ownership of the disputed area was relevant because when, as in the present case, an injunction is sought to restrain a trespass, title is an essential element of the tort of trespass. See *McCullough* v. *Waterfront Park Assn., Inc.*, 32 Conn. App. 746, 749, 630 A.2d 1372, cert. denied, 227 Conn. 933, 632 A.2d 707 (1993). To the extent that the plaintiffs argue that the element of ownership of the disputed area was not satisfied, we have determined in part I A

and B of this opinion that the court properly determined that the defendants own the disputed area free and clear of any claim by the plaintiffs of an express or implied easement.

The plaintiffs clearly dispute the court's finding of intent. The plaintiffs do not challenge the court's finding that Frederick Walters admitted to cleaning out debris from the disputed area on October 19, 2015. It is clear from the act of clearing out the debris in the disputed area that Frederick Walters had the intent to enter the disputed area, which is sufficient to satisfy the element of intent for the tort of trespass. See *Caciopoli* v. *Lebowitz*, 131 Conn. App. 306, 318–21, 26 A.3d 136 (2011), aff'd, 309 Conn. 62, 68 A.3d 1150 (2013). The intent required is the intent to enter the land in question regardless of the trespasser's subjective belief as to ownership of the land. See id. All that is required to prove intent sufficient to constitute civil trespass is the general intent to enter the land in question; a more specific intent is not required. See id. For the foregoing reasons, we conclude that the court's finding that Frederick Walters intentionally entered the defendants' property is supported by sufficient evidence in the record, that it is not clearly erroneous, and that the court's findings legally and logically support its conclusion of trespass.

B

The plaintiffs' next claims address the court's rulings regarding the defendants' counterclaim concerning the plaintiffs' filing of false affidavits of fact on the town's land records against the defendants' properties at 22 Ridge Street and 33 Cognewaugh Road. Specifically, the plaintiffs claim that the court improperly determined that the defendants prevailed on their counterclaims against the plaintiffs concerning (1) slander of

title and (2) a violation of § 47-41.[8] We agree with the first claim and disagree with the second claim alleging a violation of § 47-41.

The following additional facts, as found by the court, are relevant to our resolution of these claims. In its memorandum of decision, the court found that a November 8, 2018 letter from the plaintiffs' then attorney to the defendants contained multiple affidavits of fact from each of the plaintiffs and that the plaintiffs caused those affidavits of fact to be recorded on May 6, 2019, on the town's land records against the defendants' properties at 22 Ridge Street and 33 Cognewaugh Road. The court found that those affidavits of fact were legally defective because the affiants had no ownership interest in any of the land over which an easement was claimed and because General Statutes § 47-38 permits only the owner of land over which an easement is being claimed to file such statutory affidavits. The court further found that the affidavits were factually inaccurate because they incorrectly claimed, among other things,

---

[8] The defendants argue that, because the court awarded no money damages when rendering judgment in favor of the defendants on their counterclaims alleging slander of title and a violation of § 47-41, there is no practical relief available to the plaintiffs and, therefore, those claims are moot. "Mootness is a threshold issue that implicates subject matter jurisdiction, which imposes a duty on the court to dismiss a case if the court can no longer grant practical relief to the parties." (Internal quotation marks omitted.) *Centimark Corp.* v. *Village Manor Associates Ltd. Partnership*, 113 Conn. App. 509, 525, 967 A.2d 550, cert. denied, 292 Conn. 907, 973 A.2d 103 (2009). The court ordered that the plaintiffs were permanently enjoined from travelling onto the defendants' properties and also ordered that the affidavits of fact filed by the plaintiffs against the defendants' properties were discharged, dissolved, and had no further force or effect. Although such equitable remedies reasonably could flow from more than one of the court's resolutions of the plaintiffs' claims and the defendants' counterclaim, the plaintiffs challenged the courts' decision regarding every remaining count of the plaintiffs' complaint and of the defendants' counterclaim. Accordingly, if the plaintiffs were to prevail on the claims from which the court's orders regarding the injunctive relief and relief concerning the affidavits could flow, we could provide the plaintiffs the practical relief of vacating those orders.

that the defendants had no right of access to the Y right of way before 1993; the plaintiffs have a common-law right through map 353 to traverse 22 Ridge Street and the disputed area to travel to and from the southern intersection; from 1993 until May, 2004, the defendants allowed the portion of Ridge Street abutting 22 Ridge Street and 33 Cognewaugh Road to become overgrown with brush, eventually causing the southerly end of Ridge Street to become inaccessible from the northerly end; and the defendants obstructed and/or permitted to be obstructed that same portion of Ridge Street through the placement of boulders, debris, and other materials in that area. The defendants demanded that the plaintiffs record correcting affidavits, but the plaintiffs refused. The court found that, in filing the affidavits, the plaintiffs acted maliciously to disparage and cloud the defendants' title to 22 Ridge Street and 33 Cognewaugh Road. We now address the plaintiffs' claims in turn.

1

We begin with the plaintiffs' claim that the court improperly rendered judgment in favor of the defendants on their counterclaim of slander of title despite the fact that there was no evidence of malice. We agree.

"[O]ur standard of review when the legal conclusions of the trial court are challenged is plenary, and requires us to determine whether the conclusions reached are legally and logically correct and whether they find support in the facts set forth in the memorandum of decision. . . . To establish a case of slander of title, a party must prove the uttering or publication of a false statement derogatory to the plaintiff's title, with malice, causing special damages as a result of diminished value of the plaintiff's property in the eyes of third parties. The publication must be false, and the plaintiff must have an estate or interest in the property slandered.

Pecuniary damages must be shown in order to prevail on such a claim.

\* \* \*

[A]ctual malice requires a showing that a statement was made with knowledge that it was false or with reckless disregard for its truth. . . . A negligent misstatement of fact will not suffice; the evidence must demonstrate a purposeful avoidance of the truth. . . . Further, proof that a defamatory falsehood has been uttered with bad or corrupt motive or with an intent to inflict harm will not be sufficient to support a finding of actual malice . . . although such evidence may assist in drawing an inference of knowledge or reckless disregard of falsity." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Fountain Pointe, LLC* v. *Calpitano*, 144 Conn. App. 624, 652–56, 76 A.3d 636, cert. denied, 310 Conn. 928, 78 A.3d 147 (2013).

The court's decision that the defendants prevailed on their counterclaim of slander of title cannot stand because its findings are fatally inconsistent. See, e.g., *In re Jacob W.*, 178 Conn. App. 195, 215, 172 A.3d 1274 (2017), aff'd, 330 Conn. 744, 200 A.3d 1091 (2019). Specifically, the court found that the plaintiffs acted with malice because, by filing and refusing to correct the false affidavits upon being given notice of the falsities contained within them, the plaintiffs acted with the knowledge that the affidavits were illegitimate and/or with reckless disregard of the illegitimacy of the affidavits. These factual findings, however, are inconsistent with the court's subordinate factual findings of intent relative to the slander of title counterclaim. Specifically, the court found that the plaintiffs' conduct underlying the slander of title counterclaim "was consistent with the legal theories forwarded by the plaintiffs in this action and that the plaintiffs firmly believed them."

Because the court's ultimate factual conclusion that the plaintiffs acted with actual malice, which requires a showing that a statement was made with knowledge that it was false or with reckless disregard for the truth, is fatally inconsistent with the court's subordinate factual finding that the plaintiffs firmly believed the statements in the affidavits, the court's conclusion that the plaintiffs slandered the defendants' title cannot stand. See *In re Jacob W.*, supra, 217 ("[w]here a court's opinion contains fundamental logical inconsistencies, it may warrant reversal"). Additionally, the court awarded no damages to the defendants on their slander of title counterclaim. Pecuniary damages must be shown to prove a claim of slander of title. See *Fountain Pointe, LLC* v. *Calpitano*, supra, 144 Conn. App. 652. Accordingly, we conclude that the court improperly rendered judgment in favor of the defendants on their counterclaim of slander of title.

2

Our review of the plaintiffs' claim that the court improperly found in favor of the defendants on their counterclaim that the plaintiffs violated § 47-41 is limited by the fact that the court did not engage in a legal analysis of that counterclaim. The plaintiffs did not seek an articulation or a rectification of the court's decision pursuant to Practice Book § 66-5. "Where an appellant has failed to avail himself of the full panoply of articulation and review procedures, and absent some indication to the contrary, we ordinarily read a record to support, rather than to contradict, a trial court's judgment. . . . [O]ur appellate courts often have recited, in a variety of contexts, that, in the face of an ambiguous or incomplete record, we will presume, in the absence of an articulation, a trial court acted correctly, meaning that it undertook a proper analysis of the law and made whatever findings of fact were necessary. . . . This court will neither speculate with regard to the rationale

underlying the court's decision nor, in the absence of a record that demonstrates that error exists, presume that the court acted erroneously. . . . It is well settled that [we] do not presume error; the trial court's ruling is entitled to the reasonable presumption that it is correct unless the party challenging the ruling has satisfied its burden demonstrating the contrary." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *White* v. *Latimer Point Condominium Assn., Inc.*, 191 Conn. App. 767, 778–81, 216 A.3d 830 (2019).

The plaintiffs claim on appeal that the court "erred in holding that the plaintiffs violated [§ 47-41] because there was no evidence that the plaintiffs acted to harass the defendants or negligently or recklessly in recording their affidavits of fact." However, § 47-41 does not require harassment, negligence, or recklessness. Rather, § 47-41 provides that "[t]he notice under sections 47-38 and 47-39 shall be considered a disturbance of the right in question which enables the party claiming the right to bring an action as for a nuisance or disturbance for the purpose of trying the right. If the plaintiff in that action prevails, he shall be entitled to full costs, although he recovers only nominal damages." In their operative counterclaim, the defendants alleged nuisance or disturbance of a right pursuant to § 47-41 due to the plaintiffs' filing of false affidavits of fact on the land records against the defendants' properties concerning the disputed area.

"[Under] a common-law private nuisance cause of action, a plaintiff must show that the defendant's conduct was the proximate cause of an unreasonable interference with the plaintiff's use and enjoyment of his or her property. The interference may be either intentional . . . or the result of the defendant's negligence. . . . [T]he interference must be substantial to be unreasonable." (Citations omitted.) *Pestey* v. *Cushman*, 259 Conn. 345, 361, 788 A.2d 496 (2002). The court made no

findings of an unreasonable interference, and it seems unlikely that the court found in favor of the defendants on the ground of nuisance.

Section 47-41 also provides that a notice under § 47-38 shall be considered a disturbance of the right in question, thereby enabling the defendants to bring an action for disturbance of their unencumbered right to 22 Ridge Street and 33 Cognewaugh Road. There is scant case law defining what constitutes a disturbance of a right pursuant to § 47-41, and the plaintiffs cite no binding authority for their argument that harassment, negligence, or recklessness needs to be shown. The only case that the plaintiffs cite for this proposition is *Grass* v. *Mystic Pet Shop, LLC*, Superior Court, judicial district of New London, Docket No. CV-19-6040126-S (July 1, 2021). In that case, the plaintiffs filed a notice on the land records stating that the defendant was exceeding the scope of the easement; the plaintiffs also filed an action seeking a declaratory judgment concerning the scope of the Mystic defendant's easement over their real property. Id. The Mystic defendant filed a counterclaim alleging, inter alia, nuisance pursuant to § 47-41. Id. The court determined that the filing of notice did not constitute a nuisance under § 47-41 because "[t]his was a lawful act, and their actions do not constitute harassment." Id. It is worth noting that the basis for the Mystic defendant's claim of nuisance in *Mystic Pet Shop, LLC,* was, inter alia, that the plaintiffs harassed the Mystic defendant's customers as they tried to park and harassed the Mystic defendant's employees by yelling at them. Id.

Not only is *Mystic Pet Shop, LLC,* inapplicable in that it addresses the nuisance portion of § 47-41 and not the disturbance of a right portion, but it is also inapposite. In *Mystic Pet Shop, LLC,* the plaintiffs, as the owners of the real property at issue, filed a notice on the land records regarding the defendant having

overburdened the easement. In the present case, however, the plaintiffs filed affidavits concerning their claimed easement over the disputed area on the defendants' land records to 22 Ridge Street and 33 Cognewaugh Road. Section 47-38 provides in relevant part that "[t]he owner of land over which a right-of-way or other easement is claimed or used may give notice in writing, to the person claiming or using the privilege, of his intention to dispute the right-of-way . . . ." The plaintiffs would have to show an ownership interest in the land over which they claim an easement. They, however, do not own the disputed area. Additionally, an easement is not an ownership interest in real property. See *Stefanoni* v. *Duncan*, supra, 282 Conn. 700. The court found that the plaintiffs have no ownership interest in any of the land over which an easement is being claimed and concluded that § 47-38 permits only the owner of land over which an easement is being claimed to file such statutory affidavits. The plaintiffs make no argument that filing affidavits on the land records claiming an easement over real property over which the affiants have no ownership interest fails to constitute a disturbance of the rights of the owners of the fee simple. On the basis of the claim presented to this court and on the limited record before us, we cannot say that the court improperly determined that the plaintiffs violated § 47-41.

The judgment is reversed only with respect to the counterclaim of slander of title and the case is remanded with direction to render judgment in favor of the plaintiffs on that counterclaim; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.